Majid Foroozandeh (SBN 248685)
Arezou Bakhtjou (SBN 25693)
Law Offices of Foroozandeh, APC
9891 Irvine Center Drive, Suite 130
Irvine, California 92618
(949) 336-8505

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

CV08-08650  GAF  RCx

| | |
|---|---|
| ALICIA GUASTAFERRO, a minor, by and through her guardians, KAREN and RALPH GUASTAFERRO, individually, **Plaintiff,** v. **ROBERT IGER**, President, The Walt Disney Co.; **THE WALT DISNEY CO.**, a California corporation; **ANNE SWEENEY**, President, Disney ABC Television Group; **DISNEY ABC TELEVISION GROUP**, a California corporation; **JANICE MARINELLI**, President, Disney ABC Domestic Television; **DISNEY ABC DOMESTIC TELEVISION**, a California corporation; **KIRK SCHENCK**, President, RDF Media USA, Inc.;   [continued on next page] | Civil Action, Case No. _____ **COMPLAINT FOR:** 1) **INVASION OF PRIVACY- COMMERCIAL MISPPROPRIATION, INTRUSION UPON ANOTHER'S PRIVACY, PUBLIC DISCLOSURE OF PRIVATE FACTS;** 2) **INVASION OF PRIVACY - FALSE LIGHT** 3) **NEGLIGENCE** 4) **FRAUD** 5) **BREACH OF FIDUCIARY DUTY** 6) **LIBEL** 7) **INJUNCTIVE RELIEF** 8) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** 9) **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;** |

[Amount demanded exceeds $ 75,000]

1

COMPLAINT

**RDF MEDIA USA, INC.**, a California )
Corporation, )
**RDF PRODUCERS,** )
   Stef Wagstaffe, )
   Michael Davies, )
   Stephen Lambert, )
   Stephanie Schwam Adams, )
   Mike Gamson, )
   Mitchell Rosenbaum, )
   Julie Cooper, )
   Kenda Greenwood, )
   Stephen Pettinger, )
   Anthony Sylvester, )
   Will Nothacker, )
   Martin Goeller, )
   Daniel Markell, )
   Randy Jones, )
   Marissa Price, )
**LARRY PAGE**, President, Google, Inc., )
**SERGEY BRIN**, President, Google, Inc., )
**GOOGLE, INC.**, a California Corp., )
**JAMES BARNETT**, President, )
Altavista company; )
**ALTAVISTA CO.**, a Delaware )
Corporation, )
**CHAD HURLEY**, Chief Executive Off., )
YouTube, LLC; )
**YOUTUBE, LLC**, a California Limited )
Liability Company, and **DOES 1-20**; )
            Defendants )
                            )

## **INTRODUCTION**

This is a complaint for money damages and injunctive relief by Plaintiff **ALICIA GUASTAFERRO**, a minor, by and through her guardians, her mother, Karen Guastaferro and her father Ralph Guastaferro, against the Defendants, named above, based on the damages she has suffered and continues to suffer, as a direct result of her participation in the ABC reality television show, "**WIFE SWAP.**" The episode of the show, in which the minor appeared, aired on nationwide U.S. television on January 2, 2008.

2
COMPLAINT

1    The release on television was available for viewing in global TV markets. The global

2    marketing of the series serves to multiply the amount of her damages.

3                            **JURISDICTION AND VENUE**

4        1.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the Plaintiff,

5    a minor, is a citizen of the State of New York; the individual Defendants are citizens of the State

6    of California, and the Corporate Defendants are incorporated in the State of California and the

7    State of Delaware.

8        2.      Further, this Court has jurisdiction pursuant 28 U.S.C. § 1332, as the matter in

9    controversy, exclusive of interest and costs, exceeds the sum of $ 75,000.00.

10       3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the acts

11   complained of occurred in primarily in Orange County, California and a majority of the

12   Defendant Parties live, work, conduct their business and/or reside in Orange County, California.

13                                **PARTIES**

14       4.      Plaintiff ALICIA GUASTAFERRO, a minor (hereinafter referred to as "Alicia")

15   was and is at all times mentioned herein, a resident of Erie County, New York.

16       5.      Plaintiff's guardian, her mother, Karen Guastaferro was, and is at all times

17   mentioned herein residents of Erie County, New York. [A true and correct copy of the

18   Certificate of Appointment of Guardian(s) is attached as **Exhibit "A"** and incorporated by

19   reference herein.]

20       6.      Plaintiff's alternate/co-guardian, her father, Ralph Guastaferro was, and is at all

21   times mentioned herein residents of Erie County, New York. [A true and correct copy of the

22   Certificate of Appointment of Guardian(s) is attached as **Exhibit "A"** and incorporated by

23   reference herein.]

24       7.      Plaintiff minor Alicia Guastaferro is informed and believes, and based thereon

25   alleges, that at all times herein mentioned, Defendant **ROBERT IGER,** as an individual, was

26   and is the President of Defendant **THE WALT DISNEY CO.** (hereinafter "Walt Disney Co."),

27   a California corporation, organized and existing pursuant to the laws of the State of California,

28   doing business in the County of Orange, State of California.

8.     The Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendant **ANNE SWEENEY,** as an individual, was and is the President of Defendant **DISNEY ABC TELEVISION GROUP,** (hereinafter "Disney ABC"), a California corporation, organized and existing pursuant to the laws of the State of California, doing business in the County of Orange, State of California.

9.     The Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendant **JANICE MARINELLI** was President of **DISNEY ABC DOMESTIC TELEVISION** (hereinafter "Disney ABC Domestic"), a California corporation, organized and existing pursuant to the laws of the State of California, doing business in the County of Orange, State of California.

10.     The Plaintiff is informed and believes, and based thereon alleges that at all times herein mentioned, Defendant **KIRK SCHENCK** was President of Defendant **RDF MEDIA USA, INC.** (hereinafter "RDF Media USA, Inc."), a California corporation, organized and existing pursuant to the laws of the State of California, doing business in the County of Orange, State of California.

11.     The Plaintiff is informed and believes, and based thereon alleges that at all times herein mentioned, Defendants **LARRY PAGE** and **SERGEY BRIN** were Presidents of **GOOGLE, INC.** (hereinafter "Google"), a Delaware corporation, organized and existing pursuant to the laws of the State of Delaware, doing business in the County of Orange, State of California.

12.     The Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendant **JAMES BARNETT** was President of **ALTAVISTA COMPANY** (hereinafter referred to as "AltaVista"), a Delaware corporation, organized and existing pursuant to the laws of the State of Delaware, doing business in the County of Orange, State of California.

13.     The Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendant **CHAD HURLEY** was the chief executive officer of **YOUTUBE, LLC** (hereinafter "YouTube"), a Limited Liability Company, organized and existing pursuant to

4
COMPLAINT

the laws of the State of California, doing business in the County of Orange, State of California.

14.   The Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendants **STEF WAGSTAFFE, MICHAEL DAVIES, STEPHEN LAMBERT, STEPHANIE SCHWAM ADAMS, MIKE GAMSON, MITCHELL ROSENBAUM, JULIE COOPER, KENDA GREENWOOD, STEPHEN PETTINGER, ANTHONY SYLVESTER, WILL NOTHACKER, MARTIN GOELLER, DANIEL MARKELL, RANDY JONES, and MARISSA PRICE** (hereinafter "RDF Producers") were producers and associated with the "Wife Swap" reality television program.

15.   The Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, **GOOGLE, INC.** (hereinafter "Google"), a California corporation; **ALTAVISTA COMPANY** (hereinafter "AltaVista"), a Delaware corporation; and **YOUTUBE, LLC** (hereinafter referred to as "YouTube"), a California Limited Liability Company, owned, operated, and hosted websites and controlled search engines and related technology that are the subject of this lawsuit.

16.   The true names and capacities, whether individual, corporate, associate or otherwise of certain agents, employees, and or their alter egos sued herein as **DOES 1** through **10** and **DOES 11 through 20** are presently unknown. When the true names and capacities of said Defendants have been ascertained, the Plaintiff Alicia Guastaferro, a minor, by and through her guardian-parents will amend this Complaint accordingly.  The Plaintiff is informed and believes and thereon alleges that each Defendant designated herein as a DOE is responsible for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

### COMMON ALLEGATIONS

17.   All of the allegations in this Complaint are based on facts or information and belief and or likely to have evidentiary support upon completion of investigation and discovery.

18.   The true names and capacities, whether individual, corporate, associate or otherwise of certain agents, employees, Presidents, COO and CEO, and or their alter egos sued herein are presently unknown. When the true names and capacities of said Defendants have

1    been ascertained, the Plaintiff will amend this Complaint accordingly. The Plaintiff is informed

2    and believes and thereon alleges that each Defendant designated herein as a DOE is responsible

3    for the events and happenings hereinafter referred to, and caused injuries

4    and damages proximately thereby to the Plaintiff Alicia Guastaferro as hereinafter alleged.

5    **STATEMENT OF FACTS**

6    19.     On or about March 29, 2007, Alicia Guastaferro's mother, Karen Guastaferro,

7    entered into an written agreement with the producers of the ABC reality television show, **"Wife**

8    **Swap"** (the "Agreement") and agreed to participate and be featured in the filming of an episode

9    for the reality television show, "Wife Swap." [A true and correct copy of the Agreement is

10    attached as **Exhibit "B"** and incorporated by reference herein.]

11    20.     At all times relevant herein, the concept behind the ABC reality television show

12    "Wife Swap" was that two wives each from a different family and each a resident of a different

13    part of the country, and each with a different background, swap places and reside in the others

14    respective household.  This approach would appear to be a big departure from the "Snow

15    White" genre.  The filming then looks in on how each wife adapts into the other family over a

16    period of two weeks, each tackling the household and parenting duties of the other wife.

17    Alicia's mother Karen was to be featured as one of the wives selected for the show. Wife Karen

18    was in the first episode of the show's fourth season, which first aired on the ABC television

19    network on January 2, 2008.  In this episode, Wife Karen swapped places with Wife Angie

20    Boss, from another family.  Naturally, the children and husbands of the two families were

21    featured in the episode which was released nationally on television on January 2, 2008.

22    21.     Although the participants were led to believe that the Wife Swap episode would

23    focus on the differences between the two wives of the participating families, the Boss family

24    and Guastaferro Family, the Defendants unilaterally and without the consent of the parties

25    switched the focus of the episode to the Karen Guastaferro's 15 year old daughter Alicia,

26    breaching the terms of the Agreement. After the editing, the final production release of the show

27    depicted Plaintiff Alicia to be a spoiled diva, pampered and catered to by her parents in every

28    aspect of her life. With scripted dialogs and selective filming and editing, Alicia was no longer

portrayed as her real self. The filming followed Alicia and swept her mother Karen aside.

The voice-over narration repeatedly referred to Alicia as "spoiled Alicia," a characterization so far out of reality of who Alicia really was and is that she was transformed into a spoiled, rude, ignorant, uneducated brat to the TV viewers, locally and globally.

22. All of this was in severe contrast to Alicia's real life self, a highly academic respected student. Instead, television viewers were fed Alicia as a stereotypical "dumb blonde," lacking basic reading and spelling skills.

23. After the airing of the Wife Swap episode on January 2, 2008, Alicia became the subject of inappropriate, foul-mouthed, trashy, and demeaning website postings hosted by the Defendants, **Google**, **Alta Vista** and **YouTube,** www.google.com, www.altavista.com, and www.youtube.com. Then, footage from the TV episode was manipulated by third parties who came along and republished their altered replays with links listed on the search engines of the above Defendants. The multitude of Internet postings described Alicia with unwarranted, socially irresponsible notoriety as the "most spoiled kid in America" and the "beauty queen from Hell." Alicia's persona was reduced to zero by the market share greedy Defendants. [True and correct copies of just a few of the representative Internet Postings are collectively attached as **Exhibit "C"** and incorporated by reference herein.] There are literally THOUSANDS of these Internet Postings which, clearly are too voluminous to attach as Exhibits but a major portion of which will be produced in the course of discovery and at time of trial.

24. Alicia started receiving harassing and threatening phone calls after the January 2, 2008 TV showing of the episode. There were death threat letters; Alicia's home mailbox was filled and exploded with firecrackers. Alicia's auto was vandalized with eggs. Police reports were filed.

25. Alicia and her parents have been extremely upset by the distorted and humiliating portrayal of Alicia and her family on the TV wife swap episode which gave rise to cruel Internet depictions of the minor girl. As a result of this turmoil, Alicia has been placed under a therapist's care. Alicia will be under a therapist's care for the foreseeable future. Alicia has described her fears of being alone, as a fear for her safety in light of the threats made against her

and her family, and the isolation she experiences from her schoolmates at school. This whole affair has affected Alicia in ways unimaginable. The Defendants had to have known or should have known from their collective experience and background in and knowledge of the entertainment industry that in characterizing Alicia, on national television, as a demon, brat child, apparently to elevate the TV ratings and advertising revenue for the show, that the repercussion and backlash would be harsh and devastating and that she would experience exactly what has been occurring.

26      It is apparent that the Defendants shamelessly exploited Alicia's naiveté for commercial gain, creating a character that was to be foreseeably subjected to the very Internet damage that arose and continues with each subsequent airing of the show worldwide. The Google, Alta Vista, and YouTube sites and their Defendant corporate officers and employees perpetuate the trauma, noting that the Defendants continue to sanction and have refused to remove the Internet links and comments that perpetuate the damage to Alicia and her parents.

27.      On or about, September 10, 2008, Alicia's parents were appointed as her guardians to pursue her legal claims, through Certificate No. 16423, by the Surrogate's Court of the State of New York, Erie County.    This Certificate was obtained to establish the representative capacity of the parents for their minor daughter Alicia. [Referenced as **Exhibit "A"** above.]

29.      On or about March 29, 2007, Alicia's mother Karen entered into a written Agreement **(See Exhibit "B")** with the Defendants **RDF Media USA, Inc., the RDF Producers**; and DOES 1-10. The Agreement would have her participate in the filming of an episode for the aforementioned reality television show, "Wife Swap."

30.      Pursuant to the terms of the Agreement, Karen Guastaferro was understandably led to believe that the Wife Swap episode would focus on the differences between the two wives of the participating families, i.e., Ms. Angie Boss of the Boss family and Ms. Karen Guastaferro of the Guastaferro Family; however, the main focus of the Wife Swap episode, shifted to Alicia Guastaferro. Thereafter, without the consent of Alicia or her mother (or father), the Wife Swap episode set about to depict Alicia in a severely, negative light. Through scripted

8
COMPLAINT

dialogs and selective filming and editing, Alicia was unfairly and falsely portrayed to be extremely spoiled, pampered, rude, and catered to. In fact, the voice-over narration repeatedly referred to Alicia as "spoiled Alicia." Also, despite Alicia's good academic performance in school, which includes being named to the honor roll, national and global viewers were led to believe that she was a stereotypical "dumb blonde," lacking basic reading and spelling skills.

31.    Plaintiff Alicia never consented to be filmed as the "main event" of the show; she did not waive any privacy rights; and she did not sign the original Agreement or any release for the reality series show that was entered into between her mother and the Defendants RDF Media USA, Inc.; the RDF Producers; or any of the other named Defendants, including the DOE Defendants. And, assuming arguendo, even if she did so, at age 15, she lacked the legal capacity to enter into a valid and binding contract of this nature. The Defendants' actions constituted a knowing, intentional breach of the Agreement that was signed by Plaintiff Alicia's mother Karen. Alicia, never expressly or impliedly consented to be filmed so as to be held up to ridicule with the disrespectful, crude narration about her that was later added in the editing room.   However, in course Plaintiff's good faith attempt to resolve this matter amicably, Defendant RDF Media alleged that Alicia had on her own signed the same or a different agreement regarding this matter.  However upon Plaintiff's request that RDF Media provide a copy of this alleged agreement, no such document was ever provided.

32.    Furthermore, during filming, Alicia was abusively coached to answer questions in a specific manner on camera so as to cast her character in a false light and which later supported the narration added after the filming during the editing work. It was not by accident that the show took this different path, it was intentional. It was all too inclusively programmed to have occurred by accident or happenstance. Plaintiff Alicia alleges that the top Walt Disney company officials on down to the cameramen and script coaches approved, ratified, and endorsed the altering of the show's format.

33.    Plaintiff Alicia is suffering from severe mental anguish, severe emotional distress, and personal hardship as a direct and proximate result of the intentional conduct of the Defendants' RDF Media USA, Inc. and the RDF Producers; and the other named Defendants.

The trauma to her continues with the Walt Disney/ABC reruns, syndication to other media outlets (such as the Lifetime channel) and overseas sales for foreign distribution of the January 2, 2008 episode.

34.   The harm and mental anguish that Alicia has suffered and continues to experience was made even more outrageous by the conduct and actions of Defendant Stephen Pettinger (hereinafter "Pettinger.")  Pettinger, one of the co-producers of the ABC reality show, along with the assistance of the other Defendants, directed the filming of portions of the episode in the Guastaferro family home. Pettinger directed the scripted dialogue for Alicia to say on camera. One such script for Alicia was: *"I feel terrible for people that are not gorgeous"*

35.   Immediately after the premiere showing of the Wife Swap episode on January 2, 2008, the negative, threatening, harmful blogger comments came pouring in AND, they are indelibly present today on the Internet. (See **Exhibit "C"**) The harm to Alicia continues a year after the filming and release. One has only to enter the name Alicia Guastaferro into Google, AltaVista, or YouTube search engines to view video clips perpetuating the harm to Alicia. All the Defendants herein, are charged with the knowledge that Alicia would incur this negative notoriety on the Internet.

36.   Outside the presence of Alicia's parents, Pettinger, acting outside of the Agreement terms and conditions tutored Alicia to make statements on camera that exploited her naiveté, innocence, and inexperience. Thus, Alicia was put in the position of having to utter scripted dialogue that was obviously designed by Pettinger and other Defendants to provoke a negative reaction in the viewing television public. Plaintiff alleges that the top Disney officials and other Defendants trade in the forceful exploitation of the naiveté of a minor child for profit and gain.

37.   This outrageous conduct has tarnished the reputation and character of Alicia and has left her with only one remedy, a suit against all the Defendants to obtain redress and compensation for the attacks on her reputation, caused by the breach of the Agreement by the named Defendants. Finally, Alicia cannot rest well until the negative publicity on the Internet sites and search engine results are removed. The Defendants have the power to do this.

10
COMPLAINT

38.     Karen Guastaferro performed all conditions, covenants, and promises on her part to be performed in accordance with the terms and conditions of the Agreement. Plaintiff Alicia Guastaferro unwittingly became a pawn in the breach of contract by all the Defendants.

### FIRST CAUSE OF ACTION

### INVASION OF PRIVACY- COMMERCIAL MISAPPROPRIATION, INTRUSION UPON ANOTHER'S PRIVACY, PUBLIC DISCLOUSRE OF PRIVATE FACTS.

(As to RDF Media USA, Inc.; the RDF Producers; the Walt Disney Co.; Disney ABC; Disney ABC Domestic; Google; Alta Vista; YouTube and DOES 1-20)

39.     The Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 38 above as though fully stated herein.

40.     At all times mentioned herein, the Defendants RDF Media USA, Inc., the RDF Producers, the Walt Disney Co. Disney ABC; and Disney ABC Domestic and DOES 1-10 owned, maintained, controlled, managed, and or operated the content, script, dialogs, filming and editing, of the reality television show, "Wife Swap."

41.     When discussing Wife Karen Guastaferro's participation in the Wife Swap episode and pursuant to the Agreement, the Defendants RDF Media USA, Inc., the RDF Producers and the others named above at lines 7 and 8, informed and or assured Karen Guastaferro that she was to be the focus of the show – which is and was typical in such episodes and which was the show's advertised format until the producers met Alicia and saw that she was a perfect victim to be used and duped by them.  However, the Boss/Guastaferro Wife Swap episode concentrated on Plaintiff Alicia in a manner outside the scope and parameters of any contemplated Agreement signed by Karen and definitely without the consent of Plaintiff or her parents.

42.     Instead, the episode set out to and did depict Alicia as a stereotypical "dumb blonde," uneducated, rude, and spoiled. The Plaintiff lives an ordinary private life. She was and is a gifted teenager in her own private life who has excelled in school academics. Defendants wrongfully invaded Alicia's right to retain her prior character and status in her community and falsely characterized her in an offensive and objectionable manner for publication on television

on January 2, 2008 and thereafter in reruns and syndication which damaged her reputation then and continues to tarnish her reputation; casting a shadow upon her parents as well. The purpose of the reality show was to portray the lives of the family-swapped wives. Yet, without any concern or regard to the privacy and personal dignity of the minor child at the tender age of 15, the Defendants engineered the Wife Swap episode to look into Alicia and turn her inside out. The result was an exaggerated caricature of her, wrongly exposing her to the viewing public on television as something she was not. The airing of the January 2, 2008 television show caused her to be held up to public scorn, ridicule, hatred, contempt and obloquy with the resultant mental and physical suffering. (See **Exhibit "C"**)

43.     Pursuant to the internal policies and Terms of Use established by the Defendants Google, Alta Vista, YouTube, and the DOES, the Defendants have the right to pre-screen, review, flag, filter, modify, refuse or remove any or all content (all information - such as data files, written text, computer software, music, audio files or other sounds, photographs, videos or other images) from any service provided by them. (See http://www.google.com/accounts/TOS and http://sketchup.google.com/support/bin/answer.py?hl=en&answer=38866.)

44.     As the direct and proximate result of the Defendants' reckless failure to abide by their own terms of service by allowing the flagrant abuse of their websites in the form of the unreasonable public disclosure of false, manipulated, and abusive media revolving around the minor child Alicia to be posted on and hosted by their websites, said Defendants knowingly caused and contributed to her mental and physical suffering. She is entitled to compensation for their wrongful acts.

45.     Pettinger also portrayed the parents of Alicia falsely by creating an impression that the spoiled, rude, uneducated minor child was the product of the way she was brought up.

46.     Alicia has the right to be free from unauthorized, unwarranted publicity and commercial misappropriation of her likeness to the Defendants' monetary advantage. Instead the Defendants used her name, voice, photographs, and likeness for purposes of advertising and selling a TV series in which the Plaintiff, without her consent and exceeding parental authorization, was portrayed as noted in a negative, false light. Plaintiff is informed

and believes that the Defendants, and each of them, have sold the episode in to syndication nationally and internationally for profit and gain. Almost immediately after the airing of the episode, Alicia unwantedly became a notorious public figure, an object of reproach and ill-repute, and an infamous celebrity, who became a cash cow, a money making puppet, a sacrificial lamb, and a pawn in the Defendants' media ratings game and their ill gotten gain and profit.

47.    As the direct and proximate result of the above-alleged disclosures, the Defendants have infringed Alicia's right of privacy. She has become the object of continued public ridicule and harassment.

48.    Plaintiff demands that the Defendants, who have control of what is placed on their websites, exercise that control to remove the negative links on the Internet sites controlled by the Defendants that disparage and hold Plaintiff up to public scorn, ridicule, hatred, contempt and obloquy.

## SECOND CAUSE OF ACTION

## INVASION OF PRIVACY – FALSE LIGHT

(As to RDF Media USA, Inc.; the RDF Producers; the Walt Disney Co.; Disney ABC; and Disney ABC Domestic; Google; Alta Vista; YouTube and DOES 1-20)

49.    The Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 48 above as though fully stated herein.

50.    On or about March 29, 2007, Karen Guastaferro, the mother of the Plaintiff entered into an Agreement with the aforementioned and agreed to participate in the filming of an episode for the reality television show, "Wife Swap."

51.    Mrs. Guastaferro was intentionally led to believe that the Wife Swap episode would center on the differences between the two wives of the participating families, i.e. the Boss family and the Guastaferro Family. However, the Defendants moved away from that approach, and focused on Alicia the 15-year-old daughter of the Guastaferros. Without the consent of Alicia, a minor or her parents, Mr. and Mrs. Guastaferro, the filming proceeded to portray the minor child Alicia in a false light that was highly offensive and embarrassing and

then subsequently published their outrageous characterization of her through the TV broadcast of the Wife Swap episode on January 2, 2008. The Defendants coached Plaintiff Alicia with dialogue from their pre-developed scripts in conjunction with selective filming and editing techniques which portrayed the child unfairly and falsely as being extremely spoiled and rude. In fact, the voice-over narration repeatedly referred to Alicia as "spoiled Alicia." Also, viewers were led to believe that she was a stereotypical "dumb blonde," lacking basic reading and spelling skills.

52.    Clearly, the Defendants RDF Media USA, Inc., the RDF Producers; the Walt Disney Co., Disney ABC, and Disney ABC Domestic, and all Defendants acted with recklessness as to whether their acts would place Plaintiff in a false light with the viewing public as well as among television release of the episode. The Defendants did or should have foreseen that the particular kind of harm might occur and yet they proceeded anyway. Without Alicia's consent, Defendants invaded her right to privacy by shamelessly exploiting Alicia's innocence for commercial gain and holding her up in a false light as a spoiled, dumb blonde spoiled brat. Instead of focusing on the personality and activities of the featured wife, Karen Guastaferro, as was contemplated by the parties' original Agreement, and the show's advertised promotional premise, the Defendants intentionally drafted an episode for TV that would draw the viewers' attention on a skewed misrepresentation of the child, Alicia, thereby generating publicity that placed Alicia in a false light in the public eye.

53.    The Defendants RDF Media USA, Inc.; the RDF Producers; the Walt Disney Co.; Disney ABC; Disney ABC Domestic and all Defendants were aware of the false portrayal of Alicia and they engineered the Wife Swap episode to focus on an embroidered falsification of the minor child that invaded her personal life and transformed her on film to something she was not and then published it over television.  Wife Swap was after market share and ad revenue.

54.    Further multiplying the injury to Alicia, upon the airing of the aforementioned "Wife Swap" television episode, the persona of the minor child, Alicia, became the subject of various inappropriate and unacceptable postings on websites hosted by the Defendants. Third parties added narration and disgusting phrases for use in their videos uploaded to YouTube.

55.    The publicity created by the Defendants was offensive and objectionable to Alicia and to a reasonable person of ordinary sensibilities. Alicia has been extremely upset by the distorted and humiliating portrayal of her persona on Wife Swap, which gave rise and continues to this day to give rise to cruel and pornographic internet depictions of the minor girl, direction of foul and pornographic language upon her, death threats, and many other forms of harassment. (See **Exhibit "C"**) As a proximate result of the above-alleged disclosures, the Defendants have placed Alicia in a false light and infringed Alicia's right of privacy. Alicia has become the object of very offensive public ridicule and harassment.

56.    The Defendants knew, or should have known, that the publicity created by them through their failure to exercise due care during the filming and telecast of the aforementioned reality show "Wife Swap," and hosting the manipulated videos and inappropriate, offensive postings, would unreasonably threaten the health and safety of the minor child and it would also affect the persona of Alicia causing severe mental, emotional distress, humiliation, ridicule, and embarrassment to her. As an immediate result of the deceitful conduct of the Defendants, Alicia has sustained and continues to incur substantial insult, humiliation and disrespect from the public due to character assassination of Alicia by these very Defendants who have happily lined their pockets at the expense of the Plaintiff minor's personal welfare, legal right and her best interest.  Plaintiff has now incurred out of pocket legal fees, therapist's costs, emotional distress, and other damages in an amount to be proven at trial.

57.    Within 20 days after the Guastaferro Family learned of the broadcast of the manipulated "Wife Swap" television episode Alicia's parents served demands on Defendants demanding a correction or retraction. The Defendants have failed and refused to comply.

58.    Alicia has sustained and continues to incur substantial personal trauma as she is scorned and abandoned by her friends and family, exposed to contempt and ridicule, she is scared of going out and enjoy herself with her friends who have become limited in numbers due to the her negative notoriety, phobia of dining out fearing that others will spit on her food and having to scrape the top portion of every dish served and eating with plastic utensils because others have threaten and/or indicated they would spit on her food.  She has distrust of adults in

general, and has suffered loss of reputation and standing in the community, all of which caused her humiliation, embarrassment, hurt feelings, mental anguish, suffering, and other damages in an amount to be proven at trial. Alicia has suffered major inabilities to address the public, resume ordinary personal and professional life, incurred therapist's fees, out of pocket legal fees, severe emotional distress, physical harm, has been subjected to assaults, her car was vandalized, her boyfriend was beaten up and left her, she has asked several boys to her school's winter dance, all of whom have rejected her, and the parent of the one boy from another school who did accept has now caused the boy to distance himself from Alicia due to pressures from the community. This is just not the American way, this not the humane way, no child should be subjected to this abusive treatment anywhere in the world. It is just WRONG.  As a result of this, Alicia has incurred actual, special, mental, physical, financial, emotional, economic, legal, and personal damages and continues to suffer at the hand of these Defendants.  This Court has the power to stop and remedy all of this.

59.    In making the disclosures described above, the Defendants are charged with oppression, fraud, and malice, as the Defendants made the disclosures with the intent to vex, injure, or discredit Alicia, accompanied with a willful and conscious disregard of the Alicia's rights. Alicia therefore seeks an award of punitive damages.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

(As to RDF Media USA, Inc.; the RDF Producers; the Walt Disney Co.; Disney ABC; Disney ABC Domestic; Google; AltaVista; YouTube; and DOES 1-20)

60.    The Plaintiff incorporates by reference paragraphs 1 through 59. above as though fully stated herein.

61.    At all times mentioned herein, the Defendants RDF Media USA, Inc.; the RDF Producers; the Walt Disney Co.; Disney ABC; and Disney ABC Domestic, owned, maintained, controlled, managed, and/or operated the content, script, dialogs, filming and editing, of the reality television show, "Wife Swap."

62.     The Defendants, who aired the Wife Swap program on January 2, 2008 that included the Guastaferro family and provided Internet access via their facilities to all the inappropriate and unacceptable postings on the websites, owed a duty to Plaintiff Alicia and her family as well, to portray them in a fair, balanced, realistic manner. Instead, the Defendants went ahead with their distasteful, demeaning, scripted, and edited film focusing on the minor child Alicia instead of Karen Guastaferro, the wife, and released and published it on television without the consent of her parents, thereby breaching that duty owed to the minor child as described above.

63.     The release of the Wife Swap show by the Defendants immediately resulted in the minor child being ridiculed in the public eye and subjected her and her family to a multitude of harassing and threatening incidents, including threats to the minor child's personal safety.

64.     Upon the airing by Defendants of the Wife Swap episode on January 2, 2008, the persona and personal and public life of the minor child Alicia was severely and permanently injured. She had been demeaned and subjected to ridicule in the finished, narrated film which has been or will be published over television repeatedly in reruns and which has offensive film clips published on websites controlled by the Defendants, in particular YouTube.

65.     The Defendants were the direct and proximate cause of Alicia's injuries. But for Defendants' acts and conduct Alicia would not be in the circumstances that haunt her daily. Alicia immediately became the subject of a large number of unacceptable, foul language postings on the websites hosted by the Defendants. Her school friends began ignoring her. Boys refused to date her. She has become an anathema to all whom come near her at school and after school. She is shunned by her peers, by adults in her neighborhood, by the townspeople she comes into contact with and by most others who have viewed this TV Show. This has resulted in Alicia suffering emotional and physical trauma. She continues to receive counseling and treatment by a therapist to seek to resolve her depressed condition, all resulting from the acts and conduct of the named Defendants.

66.     As should have been foreseeable to the aforementioned Defendants who profess to have a reputation for child-safe movie and TV programming fostered by the work of their

benefactor, Walt Disney, third parties came along and manipulated the already negative TV footage, further adding despicable subtitles and narration depicting the minor child as a spoiled, rude, pampered brat. This harm to Alicia was foreseeable to the Defendants and they knew or should have known that it was inevitable that such disparaging presentations of Alicia would crop up upon their initial release of the Wife Swap show on January 2, 2008 on national TV circuits, the Internet, and worldwide distribution channels. And it should have been recognized and board room predictable by the aforementioned Defendants that these modified film clips and segments would be published over and over again on YouTube with search engine access via Google and Alta Vista. YouTube, for example even shows the number of "hits" that each item receives on a daily basis, some in the thousands, suggesting that one item is better than another.

67. The filming, add-on narration, and release on TV by the aforementioned Defendants was and continues to be the basic cause of the harm and injury to the minor Alicia, and her parents.

68. In accordance with their own internal policies and Terms of Use, the Defendants have the right and or option to pre-screen, review, flag, filter, modify, refuse or remove any or all content (all information - such as data files, written text, computer software, music, audio files or other sounds, photographs, videos or other images from any service they offer.

However, as a proximate result of the Defendants' failure to abide by their own terms of service by allowing flagrant abuse of their websites in the form of false, manipulated, and abusive media revolving around the minor child Alicia to be posted on and hosted by their websites, said Defendants have further caused and contributed to Alicia's injuries.

69. Additionally, referencing their connection to the Walt Disney Company and the Disney Company's reputation for protecting families and providing "wholesome" family movie and TV subject matter, the Defendants RDF Media USA, Inc. and the RDF Producers and the President of the Walt Disney Co. on down to the production crews promised the Guastaferro Family that Alicia would be "taken care of" during the filming. Instead, the producers, apparently with top-level approval, manipulated the show and directed Alicia, a minor, to

answer certain questions in a way that depicted her in a poor and demeaning light.

70.     The Defendants were served with notice by the Guastaferro Family to take down the postings on their websites, but the Defendants failed to remove any or all of the postings and footage. Accordingly, the Guastaferro Family seeks an award of punitive damages.

## FIFTH CAUSE OF ACTION

### FRAUD

(As to RDF Media, Inc., the RDF Producers, and DOES 1-10)

71.     Plaintiff incorporates by reference paragraphs 1 through 70 above as though fully stated herein.

72.     The Guastaferro Family agreed to participate in the ABC realty television show "Wife Swap." Pursuant to the Agreement, the Defendants repeatedly represented to the Guastaferro Family that the show's focus would be on the Wife Karen Guastaferro who was to be the wife who would be "swapped" into the Boss family.

73.     However, at the time Defendants made the above representations to the Guastaferro Family the Defendants knew their statements were in fact untrue and knew that they had no intention in having Wife Karen Guastaferro the focus of the Wife Swap show.

74.     Defendants' representations were made with the intent to deceive the Guastaferros including Alicia. The scripting, editing, and narration for the show were developed well in advance of the shooting of this particular Wife Swap series. The shooting immediately commenced with the switch of emphasis from Wife Karen to her daughter Alicia. In truth and fact the Defendants had no intention of living up to the representations they made to Karen, her husband, and to Alicia that the show would focus on Karen Guastaferro, to carry out the theme of a Wife Swap.

75.     In reliance thereon, and without any notice or knowledge that said representations were false and untrue by said Defendants, Plaintiff Alicia and her parents relied upon Defendants representations and proceeded with the filming. Thus, the Defendants had successfully induced the Guastaferros to rely upon their false representations of fact.

76.     In truth and fact Defendants' intentions were to focus on Alicia, not her mother, and have Alicia speak on camera using pre-scripted dialog making her out to be a spoiled brat. The Defendants intentionally diverted the show's focus from the mother, Karen Guastaferro, to the daughter Alicia. The show depicted the minor child Alicia in a highly exaggerated, despicable manner, which resulted in her being scorned by her friends, schoolmates, and others who viewed the show during and after its first release on television. They believed what the show intended, that Alicia was a spoiled brat. Apparently the Defendants anticipated that the notoriety would enhance the viewer ratings and advertising revenue.

77.     The Defendants effectively coerced and directed Plaintiff Alicia to speak on camera according to Defendants' script, which falsely depicted Alicia to be a spoiled, ignorant, and uneducated brat. In filming the child in that manner, the Defendants paved the way for the persona of the minor child to be the subject of various inappropriate postings on Internet search engines and aforementioned websites. Further, footage and still-shots from the television show, depicting the minor child, was edited by third parties for purposes of entry and display on the YouTube website.

These postings were coupled with threats of physical harm, sexual abuse, and other violent sexual acts which are to be perpetrated on the minor child Alicia (for example the desire by many commentators to gang bang the plaintiff), all of which essentially amounts to child pornography and child terrorism.  (See **Exhibit "C"**) The Defendants are supplying the tools and the weapons by which these terrorists and other disturbed individuals (including the Defendants themselves) are attacking the minor child from every angle and direction, and this Court has the power to stop the Defendants' vile acts now. These edits some with pornographic and perverse subtitles about Alicia are posted all over these Defendants' sites.  Noting that the Plaintiff is a minor child, yet the Defendants are not taking any steps to remedy or stop this conduct, where it is easily within the Defendants' power and ability to do so without it being burdensome or causing the Defendants undue hardship to terminate and remove the third party postings.  It is also very easy for the Court to keep track and monitor the efforts of Defendants to accomplish the goal of protecting the minor child.

The YouTube site is troubled by existing pornographic and violent content, including execution scenes of Alicia, hardly a wholesome medium for Alicia to be thrust into.  The Guastaferros did not bargain for this.

78.   At all times Plaintiff and her parents were unaware of the Defendants' false, fraudulent, and damaging intentions and their intent to induce Alicia and her parents to work within the altered format.

79.   Plaintiff and her parents justifiably relied upon the knowledge, experience, reputations, and representations of the Defendants based upon the Defendants' superior position of knowledge of how the TV and movie industry handles such matters involving the production of a TV show like Wife Swap. Further, they relied upon the internal policies and Terms of Use established by the Defendants as presented to them.  The parents were misled to trust Disney, they were told, "…if you can't trust us (meaning Disney), whom can you trust?" After all, everywhere in the world, in every household, the name "DISNEY" is synonymous with wholesome family entertainment and, in every sense of the word that it is benign to children the world over.  That was the only reason that the Guastaferros at the time left their minor child during the filming of the episode alone and in the care, control, and custody of the producers and the camera crew of the Defendants.  They were assured that Alicia would be taken care of and not harmed.  But this was not the case and Alicia was harmed intentionally at the hand of these very Defendants whose sole purpose was to line their pockets with money at the expense of a minor's rights, best interests, welfare, and personal well-being.  This Court has the power to remedy this situation.

80.   The Defendants made such representations with the intent to deceive and defraud the Plaintiff and her parents and to induce the innocent and naïve 15 year old minor child Alicia to act and rely upon Defendants' false, fraudulent, and misleading representations in the manner alleged herein.

///

///

81.     All the aforementioned actions of the Defendants (RDF Media USA, Inc.; the RDF Producers and other Defendants) consisted of intentional misrepresentation, deceit, and/or concealment of a material fact known to the Defendants with the intention of depriving Plaintiff of her legal rights or otherwise causing mental distress and public humiliation, and such conduct subjected the Plaintiff to an unjust hardship in conscious disregard of her rights.

82.     As a proximate result of the fraudulent conduct of the Defendants, Plaintiff Alicia is informed and believes, and thereon alleges, that the Defendants are liable for making false representations regarding the filming of inappropriate episodes breaching and/or disregarding the Agreement. Furthermore, the Defendants intended to mislead the minor child through their dialog direction of what she was told to speak on camera. As a result of Alicia's and her parents' reliance on these representations, Alicia has sustained and continues to incur substantial insult, humiliation and disrespect from the public and her friends, out of pocket legal fees, therapist's costs, emotional distress, and other damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

(As to RDF Media USA, Inc.; the RDF Producers; the Walt Disney Co.; Disney ABC; Disney ABC Domestic; Google; Altavista; YouTube; and DOES 1-20)

83.     Plaintiff incorporates by reference paragraphs 1 through 82 above as though fully stated herein.

84.     The Defendants, RDF Media USA, Inc., the RDF Producers; the Walt Disney Co.; Disney ABC; Disney ABC Domestic, have committed a breach of fiduciary duty causing grave harm to the Plaintiff and her parents.  When the Defendants assured the Guastaferros that they will protect Alicia while she was in their care, control and custody during the filming, this gave rise to assumption of fiduciary duties to a minor child such as a special relationship of teacher/student, guardian/minor, coach/team members, chaperone/minor children, etc... all within the heightened duty of fiduciary.  The Defendants and each of them assumed the fiduciary relationship towards the minor child willingly and even encouraged the parents to leave Alicia with them while they were filming her segments in the parents' absence.

During the filming Alicia was left in their care, custody and control.  Plaintiff was reassured that the primary focus of the reality show "Wife Swap" was to be the wives. However, the Defendants focused on the minor child Alicia and depicted her in an improper manner resulting in humiliation and public ridicule to her and her family.  The above Defendants breached the terms and conditions of the Agreement, and made the minor child the center of attraction by showcasing her to be spoiled, ignorant and an uneducated brat, and by doing so they breached their fiduciary duty.

85.    Furthermore, the Defendants, Google, AltaVista, YouTube, and DOES 11-20, being service providers, have also breached their fiduciary duty of restraining the depiction of inappropriate footages and postings edited by third parties on their websites. The Defendants are responsible for damaging the persona of the minor child Alicia, as various inappropriate and unacceptable postings edited by third party were and continue to be hosted on the Defendants' websites.  The internal content policies established by the Defendants (Google, Alta Vista, and YouTube) and the State and Federal Laws prohibiting child pornography prohibit them from broadcasting such inappropriate and unacceptable postings about an underage child.  Such offensive postings have caused immense psychological and emotional distress to the Guastaferro Family and their minor child Alicia. Alicia sees the suffering of her parents, and in her own child like manner tries to soothe and comfort her parents, but inside she deals with the constant emotional rollercoaster of seeing her parents' agony and has tendency to blame herself for what the Defendants have brought upon her and her parents.   This has then exacerbated her already severe emotional distress by seeing up close and personal and on daily basis her parents suffer due to Alicia's suffering.

86.    Due to the unrestrained depiction and daily saturated bombardment of such footage and postings, the Plaintiff has been subjected to continued public ridicule, harassment, isolation and vandalism.

///

///

87.    As a result of the inappropriate postings on the websites hosted by the Defendants, Google, AltaVista, and YouTube, the Plaintiff Alicia Guastaferro has been placed in a therapist's and a psychiatrist's care to seek relief for psychological and emotional pain. Such unacceptable postings have damaged the minor child's persona, inducing various fears of being alone and fears as to her safety while out in public and at school.  Plaintiff also is suffering from distrust of adults in general, fear of dining out, phobia of restaurant prepared foods, and other disorders caused by Defendants' acts and omission according to proof at the time of trial. This Court has the power to stop this inhumane treatment of this minor child by granting the injunction asked for herein as part of the remedies sought by the Plaintiff.

88.    Thus, the Defendants have failed to keep a check on, monitor, and disable the availability of various manipulated videos and/or inappropriate, offensive postings depicting the minor child Alicia, thereby contributing to the emotional and psychological damage suffered by Alicia.

89.    The Defendants knew, or should have known, that their failure to exercise due care during the filming and telecast of the aforementioned reality show "Wife Swap," and/or hosting the third party manipulated videos and/or inappropriate, offensive postings, would unreasonably threaten the mental, emotional, and physical health and safety of the minor child and it would also affect the persona of the minor child, Alicia, causing severe mental, emotional, and physical distress, as well as humiliation and embarrassment to her.

90.    As a proximate result of the aforementioned breach of fiduciary duty by the Defendants, the Plaintiff has sustained and continues to incur substantial personal trauma, including but not limited to, inability to address the public, therapist's fees, out of pocket legal fees, emotional distress, and other damages in an amount to be proven at trial.

///

///

24
COMPLAINT

## SIXTH CAUSE OF ACTION

## LIBEL

(As to RDF Media USA, Inc.; the RDF Producers; the Walt Disney Co.; Disney ABC; and

Disney ABC Domestic; Google; AltaVista; YouTube; and DOES 1-20)

91.    Plaintiff incorporates by reference paragraphs 1 through 90 above as though fully stated herein.

92.    At all times mentioned herein, the Defendants owned, maintained, controlled, managed, and/or operated the content, script, dialogs, filming and editing of the reality television show, "Wife Swap."

93.    At all times herein mentioned, the Plaintiff and her parents resided in the City of Williamsville, County of Erie, in the State of New York. The Plaintiff has resided for many years in the present location and at all times has enjoyed a fine reputation within her community and with her friends and school classmates.

94.    The airing on television of the Wife Swap episode on January 2, 2008, was shown across the U.S. and into affiliated foreign areas, essentially on a "global basis." It was therefore published to third persons and contained the specified false and defamatory matter mentioned in the other allegations above. The episode depicted the persona of the minor child Alicia in a despicable, negative and false light in the released episode of the show.

95.    That the publication was understood in its defamatory sense is demonstrated by the multitude of inappropriate, unacceptable, foul-mouthed postings on the websites hosted by the Defendants, Google, AltaVista and YouTube. Furthermore, footage from the television program depicting the Plaintiff minor child Alicia has been inappropriately pirated and manipulated by third parties with added narration and subtitles for purposes of insertion on YouTube and other search engines and websites. The amount of publication of the libelous material is beyond counting. It's everywhere on the Internet. One has only to Google the name Alicia Guastaferro and up comes hundreds of blog and Internet links republishing the trashy characterization of Alicia and her parents. (See **Exhibit "C"**) Plaintiff and her parents did not solicit this kind of false notoriety. It has been knowingly thrust upon them by the Defendants.

96.     The foul language, trashy and pornographic blog entries and YouTube videos refer to Alicia, and her parents. They are a continuing source of frustration, hurt, anguish, and emotional distress to the family. Such Internet postings have described Alicia with various unwarranted notoriety as the "most spoiled kid in America" and the "beauty queen from hell."

97.     There is no truth to the libelous characterization of Alicia in all the ways presented in the Wife Swap episode and on the Internet links and blogs. Quite to the contrary, she is an intelligent, caring, charming person in her personal life who excels in her schoolwork.

98.     The damage to the reputation of Plaintiff has become incalculable.

99.     The show was seen and continues to be seen and heard by persons who reside in and around where Plaintiff resides with her parents and the rest of the country and even in the global community.

100.    The Defendants likely intend to syndicate the show and republish the show many times in the future. Such republication perpetuates almost infinitely the damage to the Plaintiff.

101.    As a direct and proximate result of the broadcasting of the show and/or the providing of access to all the inappropriate and unacceptable postings on the websites, Plaintiff has suffered loss of her reputation, incurred shame, mortification, severe emotional distress, disorders, and hurt feelings. Alicia and her parents did not consent to Alicia being libeled in this manner, nor did the Defendants alert them beforehand that there could and would be a multiplicity of extremely foul, negative and pornographic blog entries and Internet comments such as "...she needs to be gang banged...", and "..."I tapped that shit a few times..." of the type that the show has brought upon the Plaintiff. (See **Exhibit "C"**)

102.    The negative portrayal of Alicia in the Wife Swap episode that originally aired on January 8, 2008, is false.  It is libelous on its face as a matter of law. It clearly exposes the minor child Alicia to hatred, contempt, ridicule, and obloquy due to the negative portrayal of her. Through scripted dialogs and selective filming and editing, the minor child was unfairly and falsely portrayed to be extremely spoiled and rude, which in her personal life, she is not.

///

103.   As a proximate result of the broadcasting of the show and/or the providing of access to all the inappropriate postings on the websites, Plaintiff has suffered loss of her reputation, shame, mortification, and hurt feelings all to her injury and general damage.

## SEVENTH CAUSE OF ACTION

## REQUEST FOR INJUNCTIVE RELIEF

(As to Google; AltaVista; YouTube; and DOES 11-20)

104   Plaintiff incorporates by reference paragraphs 1 through 103 above as though fully stated herein.

105.   Shortly after the initial release on January 2, 2008 on television of the Wife Swap episode of the Guastaferro Family, they discovered that on various websites owned and operated by the Defendants (Google, AltaVista, YouTube, and DOES 11-20), there appeared an incredible amount of unregulated objectionable content including pornography as measured by said Defendants' own policies and manuals regarding content on their websites.

106.   Such objectionable, pornographic, or otherwise objectionable material consisted, in general, of such postings as Alicia being described as the "most spoiled kid in America" and the "beauty queen from hell," including references to Alicia in pornographic terms, i.e. what some bloggers would like to do to her and with her. Additionally, footage of Alicia from the Wife Swap television show was edited and manipulated by third parties and inappropriately displayed on the YouTube website, subjecting the minor child to further public humiliation.

107.   Plaintiff's parents sent a "take down" letter to the Defendants, Google, AltaVista, and YouTube, demanding that said objectionable, pornographic, or otherwise objectionable content be immediately removed from the Defendants' websites.

105.   In response to the parents' letters said Defendants appeared to have removed some content. However, it was subsequently determined that objectionable, pornographic, or otherwise objectionable content relating to the minor child Alicia remained on the Defendants' websites. In addition, new objectionable content was also uncovered.

///

27
COMPLAINT

106.    Since sending the letters to the Defendants, Google, AltaVista, and YouTube, the Defendants have not contacted the Guastaferro family to attempt to ameliorate the situation nor have they removed or otherwise prevented the uploading of new or updated or revised, objectionable, pornographic, or otherwise foul content regarding the minor child Alicia Guastaferro.

107.    As a result of the objectionable, pornographic, or otherwise objectionable content being posted on the Defendants' websites, the minor child Alicia has been placed under a therapist's and psychiatrist's care.  To date, Alicia has been demonstrating fear associated with being alone, as well as fear for her safety in light of the threats made against her and her family.

108.    The conduct of the Defendants, Google, AltaVista, and YouTube, unless and until enjoined and restrained, will cause great and irreparable injury to the Guastaferro Family.

109.    These postings were coupled with threats of physical harm, sexual abuse, and other violent sexual acts which are to be perpetrated on the minor child Alicia (for example the desire by many commentators to gang bang the plaintiff), all of which essentially amounts to child pornography and child terrorism. (See **Exhibit "C"**)  The Defendants are supplying the tools and the weapons by which these terrorists and other disturbed individuals (including the Defendants themselves) are attacking the minor child from every angle and direction, and this Court has the power to stop the Defendants' vile acts now. These edits some with pornographic and perverse subtitles about Alicia are posted all over these Defendants' sites. Noting that the Plaintiff is a minor child, yet the Defendants are not taking any steps to remedy or stop this conduct, where it is easily within the Defendants' power and ability to do so without it being burdensome or causing the Defendants undue hardship to terminate and remove the third party postings. It is also very easy for the Court to keep track and monitor the efforts of Defendants to accomplish the goal of protecting the minor child.  The YouTube site is troubled by existing pornographic and violent content, including execution scenes of Alicia, hardly a wholesome medium for Alicia to be thrust into.  The Guastaferros did not bargain for this.

///

28
COMPLAINT

A permanent injunctive order is both necessary and appropriate since the Plaintiff has no adequate remedy at law for the removal of the objectionable material. Thus, the conduct of the Defendants unless and until enjoined and restrained by this Court, will continue to cause great and irreparable injury. Such an injunction would not be burdensome or cause an undue hardship upon the Defendants as such affirmative action on their part would take place in the ordinary course of their business and is certainly easily within their power, ability, financial means, and technological know-how to do so.

110. Accordingly, the Plaintiff, through her parental guardians, requests the imposition of a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining and ordering the Defendants, Google, AltaVista, and YouTube, to self-monitor their websites and to remove the offensive, pornographic, or otherwise objectionable content relating to the minor child Alicia Guastaferro and her parents' participation in the Wife Swap episode that originally aired on January 2, 2008.

### **EIGHTH CAUSE OF ACTION**

### **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

(As to RDF Media USA, Inc.; the RDF Producers; the Walt Disney Co.; Disney ABC; Disney ABC Domestic; Google; AltaVista; YouTube; and DOES 1-20)

111. Plaintiff incorporates by reference paragraphs 1 through 110 above as though fully stated herein.

112. The Defendants' RDF Media USA, Inc.; the RDF Producers, the Walt Disney Co., Disney ABC; and Disney ABC Domestic. in their reality television show "Wife Swap" focused on the minor child Alicia, who was portrayed in a false light. The distasteful exhibition of the minor child, without the consent of her parents or the minor child, resulted in the minor child being ridiculed in the public eye and subjected to numerous harassing and threatening incidents, including threats to the minor child's personal safety.

///

///

113.   The extreme and outrageous conduct by the Defendants toward Alicia exhibited an intentional reckless disregard of the probability of their actions and conduct causing emotional distress to Alicia. She has suffered and continues to suffer severe emotional distress. The outrageous conduct of the Defendants was the actual and proximate cause of the emotional distress.

114.   The Defendants knew or should have known and realized that their conduct described above in great detail, would inflict and would result in the extreme emotional distress and suffering to Alicia. The conduct of the Defendants was so extreme that it exceeded all bounds of that usually tolerated in a civilized community; subjecting Alicia to incredible suffering that at her tender age she has not been able to handle.

115.   The conduct of the Defendants, RDF Media USA, Inc., the RDF Producers, the Walt Disney Co., Disney ABC, and Disney ABC Domestic, toward Alicia without her consent or understanding and without the approval of her parents was intentional and malicious. The Defendants had to know beforehand in drafting the script and scene layouts that they would be exposing Alicia to humiliation, mental anguish, and emotional and physical distress, all for the further purpose of increasing the ratings of the show and to increase the advertising revenue. Apparently, the viewing numbers game controls the costs of advertising for the advertisers.

116.   Today's TV shows feed and thrive on showing blood, guts, terror, and destruction. It is unusual that The Walt Disney Co. and the other Defendants, who tout their reputation for family viewing shows (acceptable for children to view) would engage in a show with the name "Wife Swap" which has an implied sexual connotation to it.

117.   The Defendants, named above, with their extensive experience in TV and movie production know precisely what to write, film, and distribute in theaters and on television that will catch the attention of the viewers. Large viewership means great advertising revenue and means "staying in business." The lives of the players and reality show actors are easily sacrificed.

///

///

30
COMPLAINT

118.   The Defendants named above, consciously and falsely made the minor child Alicia appear to millions of viewers to be "the most spoiled kid in America." Hence, this depiction was done with a wanton and reckless disregard of the consequences to her.

119.   Many of the situations featured in the aforementioned episode were created by the Defendants RDF Media USA, Inc., the RDF Producers, the Walt Disney Co., Disney ABC, and Disney ABC Domestic, in order to portray the minor child and her parents in a false light. It became known to Plaintiff's parents that when they were not present at home during the filming involving their daughter Alicia, the RDF Producers with the approval of all the Defendants coached the minor child to give contrived responses to questions that were designed to further her persona as a spoiled, ignorant, and uneducated only child.  Furthermore, video footage of Alicia from the television show was subsequently edited in by third parties and displayed on Defendants' websites with the added ugly and offensive content. Defendants knew or should have known that such editing would occur and subject Plaintiff to severe emotional distress.

120.   The Defendants' portrayal of the minor child, Alicia, on the aforementioned show and further, resulting in various video footages being posted on the Defendants' (Google; Alta Vista; YouTube; and DOES 11-20) websites have been extremely upsetting and damaging to her. As a result, Alicia is under a therapist's and psychiatrist's care. This emotional distress experienced by her is of such quantity and enduring negative quality that she should not be expected to endure it.

121.   The acts of the Defendants in the inappropriate airing of video footage, as alleged above, as well as the failure by the Defendants Google, AltaVista, and YouTube to immediately remove the inappropriate postings from their search engines, resulted in the minor child being ridiculed in the public eye.

122.   The acts of the Defendants constitute extreme and outrageous conduct that is intolerable in any civilized society.

///

///

31
COMPLAINT

123.   The Defendants knew or should have known that their conduct as alleged herein would cause Alicia to suffer humiliation, mental anguish, and emotional and physical distress.

124.   As a proximate result of the above-alleged disclosure, Plaintiff and her parents received harassing and threatening phone calls and letters (including death threats) and vandalism. These threats and public ridicule have been extremely upsetting for Plaintiff. The Plaintiff seeks compensation for her emotional distress inflicted upon her by the Defendants.

## NINTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(As to RDF Media USA, Inc.; the RDF Producers; the Walt Disney Co.; Disney ABC; Disney ABC Domestic; and DOES 1-10)

125.   Plaintiff incorporates by reference paragraphs 1 through 124 above as though fully stated herein.

126.   The Defendants named above in filming the January 2, 2008 Wife Swap episode focused on the Plaintiff Alicia instead of the mother Karen Guastaferro who was "swapped" to the other home.

127.   Karen Guastaferro had consented to participate in the production of an episode that showed how the swapped wives coped with the different family situations. Instead, the Defendants deceitfully shifted the focus of the show from the wife/mother participant to the activities of the minor child Alicia, who never expressly consented to be filmed to such an extent.

128.   Plaintiff's parents were led to believe that an express object of the Agreement with the Defendants named throughout this complaint was their mental and emotional well-being, NOT what happened to their daughter and what the Defendants inflicted upon her, thereby breaching the Agreement as well.

129.   The Defendants named above promised Alicia's mother that since her daughter was a minor, Alicia would be properly cared for during filming, mentioning on more than one occasion their connection to the Walt Disney Company and Disney's reputation for protecting families and minor children in their care during show production.

Nevertheless, abusing the trust of the Alicia and her parents, the Defendants manipulated the filming of the show and directed the minor child to answer certain questions in a way that depicted her in a false light. When the Defendants assured the Guastaferros that they will protect Alicia while she was in their care, control and custody during the filming, this gave rise to assumption of duty of care to a minor child such as it would be in a special relationship of teacher/student, guardian/minor, coach/team members, chaperone/minor children, etc... all within heightened duty of care. The Defendants and each of them assumed the duty of care towards the minor child willingly and even encouraged the parents to leave Alicia with them while they were filming her segments in the parents' absence. During the filming Alicia was left in their care, custody and control.

Plaintiff was reassured that the primary focus of the reality show "Wife Swap" was to be the wives. However, the Defendants focused on the minor child Alicia and depicted her in an improper manner resulting in humiliation and public ridicule, and sever emotional distress to her and her family. The above Defendants breached their duty of care to Plaintiff, and made the minor child the center of attraction by showcasing her to be spoiled, ignorant and an uneducated brat.

130. Had Karen Guastaferro been told by the Defendants at the time of her signing the Agreement that the Wife Swap episode was going to switch its basic theme from featuring her to instead featuring her daughter Alicia, and that they were going to thrust Alicia into a character defamation situation, Karen Guastaferro would never have signed the Agreement.

131. The Defendants, and each of them, negligently failed to exercise the proper degree of knowledge and skill, to avoid in particular, depicting the minor child in a highly exaggerated, inaccurate, and improper manner, which resulted in her being scorned in the public eye. The RDF Producers unfairly coached the minor child to answer questions in a particular manner, a group of adults convincing a minor that these were proper responses. By doing all of this the Defendants and each of them breached their duty of care.

///

///

33

COMPLAINT

132.   In fact, it turned out that the RDF Producers tried to and succeeded in eliciting responses from Alicia on camera that portrayed her to be spoiled, ignorant, and uneducated. Publicly humiliated, Plaintiff has been placed under a therapist's care due to the emotional distress and trauma she has had to endure resulting from the egeregious acts of the adult Defendants toward her, a minor.  It was foreseeable by breaching their duty of care to Alicia, they would cause here sever emotional distress.  The produces and their bosses wanted nothing more than to use her to line their pockets with money and increase the ratings of Wife Swap. then to throw her away like yesterday's newspaper. The fact that they continue to air the same episode (more than any other episode in the series) shows that they prosper by continuing to inflict injury to the minor and in total reckless disregard for her welfare, best interest, rights, and personal well being.

They knew or should have known, that once this material was published and viewed by mainstream audience globally, it would tarnish Alicia's image and damage her psyche forever. This is a fact that no parent can deny, as some of them must have children of their own, that this was and is something that they would never have done to their own children but they willingly, in pursuit of money and ratings, did the very same thing to Alicia, a minor child.  Had the Guastaferros been told the truth about the extent of Defendants' manipulation and what they had coached Alicia to say, they would have never allowed Alicia to be exposed to this harm. The Guastaferros were fooled, misrepresented to, lied to, and simply taken advantage of, all in the name of DISNEY.  Defendants will bring to Court the extensive self-serving 23 page Agreement (**See Exhibit "B"**) in single spaced type set, wanting to prove that Alicia's parents read and approved of the terms.  Defendants in their self righteous, self serving defensive posture will additionally attempt to convince this Court that Alicia knew what she was getting herself into as she was involved in beauty pageants all her life.  However, what these vile Defendants did to this child goes astronomically beyond any standard of decency, any reasonable contract, and flies in the face of the implied covenant of good faith and fair dealing with her parents.  Certainly if there ever was a contract with Alicia, as RDF Media alleges and has referred to, but has refused to produce to Plaintiff's counsel in informal discovery, the

34
COMPLAINT

1  conduct of Defendant's went beyond the four corners of said contract.  The law of contracts

2  makes any kind of contract with a minor either void or voidable and allows the minor to

3  disaffirm such a contract except for the necessaries of life. This holds true especially if the

4  subject contract exploits the child, in the manner as Defendants have done herein and

5  perpetrated in such a bad faith.  On July 31, 2008 during a conference call with Kirk Schenck,

6  President and General Counsel of RDF Media and his associate Ms. Miranda Wang,

7  Mr. Schenck informed and alleged Plaintiff's counsel, Majid Foroozandeh that Alicia had

8  independently signed a contract similar to the one signed by her parents. (**See Exhibit "B"**) ").

9       133.   As a direct and proximate result of such acts, Plaintiff Alicia Guastaferro has

10  sustained and suffered and continues to suffer emotional injuries including injuries to her

11  health. She has suffered and continues to suffer severe physical and mental pain and anguish in

12  connection therewith. The full extent of her injuries and damages has yet to be fully ascertained

13  and Plaintiff through her guardian will seek leave to amend this Complaint to allege the full

14  extent of such injuries and damages when they have been fully determined.

15       134.   Plaintiff's parents previously caused to be served a notice of their intention to

16  commence this action on the Defendants RDF Media USA, Inc., the RDF Producers, the Walt

17  Disney Co., Disney ABC, Disney ABC Domestic, and the other named Defendants.

18

19                  **PRAYER FOR RELIEF**

20

21       WHEREFORE, the Plaintiff prays for judgment against the Defendants, and each of

22  them, as follows:

23       The Plaintiffs reserve the right to seek leave to amend the complaint for additional

24  damages, as damages are increasing daily:

25       1.    For general damages in excess of $25,000,000 or such other sum according to

26           proof;

27       2.    For special damages according to proof;

28       3.    For exemplary and punitive damages according to proof;

4.    For reasonable attorneys fees according to proof;

5.    For imposition of constructive trusts over the ill gotten gain by Defendants and all of them from commercial misappropriation of Plaintiff's likeness and image.

6.    For injunctive orders against Defendants according to proof;

7.    For costs of suit; and;

8.    For such other relief as the Court may deem just and proper.

Dated: December 30, 2008

Respectfully submitted,

LAW OFFICES OF FOROOZANDEH, APC

By: _____

Majid Foroozandeh. Esq.
Attorney for the Plaintiff

36
COMPLAINT