## WIFE SWAP

## RELEASE AND WAIVER, AGREEMENT NOT TO SUE, INDEMNIFICATION AND HOLD HARMLESS AGREEMENT, AND PARTICIPANT AGREEMENT

**I UNDERSTAND THIS IS AN IMPORTANT LEGAL DOCUMENT RELATING TO MY PARTICIPATION IN AN EPISODE OF THE SERIES, AND BY SIGNING THIS DOCUMENT I AM WAIVING LEGAL RIGHTS I MAY HAVE AGAINST PRODUCER, NETWORK, BROADCASTERS, SPONSORS OF THE SERIES AND OTHERS.**

RDF Media USA, Inc. ("Producer") and I have entered into and/or I have received the following (copies of which are attached hereto as exhibits): (A) Authorization for Release of Medical Information (To Be Given to Each of Applicant's Physicians); (B) Notice of Consumer Report and Investigative Consumer Report and Summary Of Rights Under the Fair Credit Reporting Act; (C) Disclosure and Authorization for Consumer and Personal Background Reports; (D) Authorization for Release of Records & Information; (E) Authorization for Release of Medical Records & Information and (F) Emergency Medical Release, each relating to the potential television series consisting of one or more episodes currently entitled *Wife Swap* (the "Series"). In addition I may have entered into and/or completed one (1) or more Release and Indemnity Agreement(s) and/or Participant Questionnaire(s) in connection with the Series selection process. In consideration of and as an inducement to Producer entering into this Release and Waiver, Agreement not to Sue, Indemnification and Hold Harmless Agreement, and Participant Agreement ("this Agreement") and further considering me and all of the members of my household to become one of the following: (a) a family member who is "swapped" with another participating family member("Wife") or (b) a regular household member (e.g. spouse, child(ren), cohabitant, boyfriend/girlfriend, extended family, nanny, etc.) in a household whose Wife is swapped ("Family"), as applicable, in at least one episode of the Series (Wife (who, for the avoidance of doubt, may or may not be a female Family member and may or may not be legally married) and Family household members are sometimes hereinafter collectively referred to as "Participants", and "Participant" as used hereinafter shall mean a person selected by Producer to participate in the Series as a Wife or Family member), I am making the representations, warranties, disclosures, covenants and agreements described below. If any disclosure, representation or warranty made by me is false or misleading or if I breach any covenant or agreement made in this Agreement or any other form, agreement, application, questionnaire or release in connection with the Series, including those set forth above (collectively, the "Series Agreements"), Producer may at its sole discretion remove me and my Family from participation and/or appearance in the Series and the episode in which I have participated and/or am scheduled to participate (hereinafter the "Episode"); Producer may make any explanation, announcement, on-air or otherwise, Producer or any network broadcasting the Series (the "Network") may choose; and I acknowledge and agree that any injury, loss, claim, damage, or expense based upon or arising from any such removal, explanation or announcement shall be included within the matters released, waived and indemnified against under paragraph V, below. I deem it to be in my best interest to enter into this Agreement and I am signing this Agreement voluntarily, knowingly and of my own free will.

Accordingly, Producer and I agree as follows (**PLEASE INITIAL EACH LINE INDICATED BELOW TO INDICATE YOUR ACCEPTANCE OF EACH PROVISION**, including the subparagraphs thereto):

I.   **DISCLOSURES AND ACKNOWLEDGMENTS;**

    **A.**   **General:** If I am selected by Producer, I agree to take part as a Participant in connection with the production of the Episode and participate in such activities required by Producer in connection therewith ("Activities") as and to the

SEASON THREE (Rev. June 9, 2006)

extent required by the Producer on such dates and at such locations as Producer shall
designate in its sole discretion. I understand that interviews, meetings,
psychological and/or medical evaluations (which medical evaluations are currently
intended to consist of Hepatitis A/B/C, HIV/AIDS and tuberculosis testing and, for
adults, drug testing), examinations and the like are or may be scheduled to take
place in New York, NY, my hometown and possibly other locations throughout the United
States (the "Location") for casting purposes. I also agree that in connection with
evaluating my participation in the Episode, Producer may, at its sole option, conduct
a background check on me and, if requested, I will release my medical, financial and
other records to Producer, as more fully described in Exhibits A, B, C, D and E
hereto, which are hereby referenced and made a part of this Agreement. In addition,
my actions, voice and sound effects during the pre-production period and on the
Location during production (tentatively scheduled for some period between June 2006
and December 2006)) will be filmed, videotaped and/or otherwise recorded for the
Episode on an up to 24 hours a day, 7 days a week basis. Because it is not
Producer's intention to record me using hidden cameras and/or microphones, Producer
agrees to inform me as to the location of Series cameras and microphones.
Notwithstanding the foregoing, I acknowledge that, given the nature and duration of
the Series production schedule, there may be times when I disregard and/or forget
that such recording is taking place. Accordingly, I hereby acknowledge and agree
that by participating in the Series I consent to Producer's videotaping, filming
and/or recording of me and knowingly and voluntarily waive any privacy rights I may
have, regardless of whether I remain aware that recording of my actions and
conversations is taking place. I also agree to attend any meetings or interviews
required by Producer in connection with my preparation for or participation in the
Episode. I further agree to be available and to participate as when and where
Producer may require in connection with publicity, interviews and similar matters
(e.g., to appear on news shows, talk shows and other programs, and to make other
appearances as required by Producer) in connection with the Episode as when and where
designated by Producer in its sole discretion. INITIAL HERE: _VH_

   B.   **Knowledge of Series Nature and Content and Agreement to Comply with All
Rules, Directions, and Instructions**: I am familiar with the nature and concept of the
Series. I understand that the Series is a reality television show and is not a game
show. I understand that I will not be awarded any "prize" for participating. INITIAL
HERE: _VH_

         (1)   If I am selected as a Participant in the Episode, during the period
of production, including any extensions scheduled at Producer's sole and absolute
discretion ("Production Period"), I will be expected to allow a television crew
("crew") into my home and other places I frequent where crew will follow, tape, film
and/or record me and every aspect of my life as Producer desires (including, without
limitation, eating, attending school, working at my office or other place of
business, shopping, etc.) ("Activities") at any time for a period set forth by
Producer but approximately two (2) weeks in the aggregate. In the event permission
is needed from a landlord, other person or entity in order to tape, film and/or
otherwise record at my home, I will assist Producer in obtaining such permission. I
understand that Producer may require me to participate in other activities (deemed to
be included in Activities hereunder), which may be filmed, taped and/or recorded
while the crew is in my hometown. I understand and agree that Producer shall have
the right to and/or may request that I rearrange, redecorate and/or remove items from
my home and to control all audio and video sources (e.g., televisions, radios) within
my home or, if applicable, my vehicle. I understand and agree that Producer shall
have the right to install locks as security for the Guest Wife (as defined below at
paragraph I.B (3)) and to have Producer's own security personnel/company enter my
home at any time that the Guest Wife is there. I agree that before, during and after
the Production Period, I will appear in the Episode to be interviewed and make

observations concerning the Activities and my thoughts related thereto.  I understand and agree that in addition to the approximately two-week period described above, my participation may, in Producer's sole discretion, include additional on-camera or other services (including, without limitation, taped "follow-up" interviews), which may take place up to one month or later following the such period, and I agree to make myself available to the extent Producer requires in connection with such additional services.  I agree to follow all of Producer's rules, directions and instructions in all matters (including Participant selection and decisions regarding the creation and implementation of terms, conditions and rules governing the Series). I further acknowledge and agree that all Series rules are subject to change by Producer, in Producer's sole discretion, at any time including, without limitation, while I am participating as a Participant on the Episode and that Producer's decision(s) on all matters relating to the Episode and my participation therein (including Participant selection, the Activities in which the Participants partake, and the manner in which the Episode is produced) shall be absolute, final and binding.  In addition, if any activity on the Episode is halted for any reason, I shall abide by Producer's decision regarding the resumption or discontinuance of the activity.  I understand that Producer reserves the right, in its sole discretion, to change, add to, delete from, modify or amend the terms, conditions and rules affecting the conduct of the Participants on the Episode the Activities, and the elimination of Participants from the Episode.  Any actual or alleged consequences of my following such rules, directions and instructions shall be included within the matters released, waived and indemnified against under paragraph V, below.  Producer is not obligated to notify me if and when I am or my family is eliminated.

(2)   If I am selected to participate as a Wife, I will be expected to move into the home of another Family ("Host Family") for up to two (2) weeks during the Production Period.  For a designated period within that time period, I will be expected to live in accordance with the customary Lifestyle (as defined below) of the Host Family.  Thereafter I will have the opportunity to attempt to have the Host Family adopt and adapt to my customary Lifestyle; provided, however, that Producer shall have the right to approve any such adjustments in its sole discretion. "Lifestyle" as used herein shall mean the manner in which the household is run and the interaction of the members of that household, including but not limited to meals, chores and social activities.  I will provide feedback to Producers as to the successes and failures of living with another Family.  I may be asked to take time off from my employment during the Production Period, for which Producer will not compensate me (other than via the terms of section III.B, below, entitled "Honorarium").  I will not be asked or expected to, nor will I, have any intimate or other physical contact with any members of the Host Family.

(3)   If I am selected to participate as part of a Host Family, I will be expected to allow another Wife ("Guest Wife") to live with my Family for up to two (2) weeks of the Production Period.  For a designated period within that time period, I will be expected to continue to live in accordance with my customary Lifestyle. Thereafter I will be expected to cooperate with the Guest Wife in adopting and adapting to the Guest Wife's customary Lifestyle; provided, however, that Producer shall have the right to approve any such adjustments in its sole discretion.  I may be expected to take time off from my employment during the Production Period, for which Producer will not compensate me (other than via the terms of section III.B, below, entitled "Honorarium").  If I am a student, I will be expected to continue my schoolwork during the Production Period.  I will provide feedback to Producers as to the successes and failures of living with another Wife.  I will not be asked or expected to, nor will I, have any intimate or other physical contact with the Guest Wife.

3

(4)   Notwithstanding the use of the term "Wife" in this Agreement, and I "Wife" as used herein refers to the household member who is "swapped", and I acknowledge and agree that such person who is selected in Producer's sole discretion to be "swapped" may or may not be female, male, single/unmarried, married, divorced, separated or otherwise.

C.   **Alternate Participation:**  I acknowledge that I and the members of my family may be chosen as alternates (as opposed to Participants) by Producer in its sole discretion.  If I am chosen as an alternate, I shall remain available to participate in an Episode as a Participant if and when chosen by Producer to replace a Participant.  I acknowledge and agree that Producer may, at any time and in its sole discretion, add, remove or replace Participants.

D.   **Medical/Psychiatric Examinations:**  I agree to undergo to the extent permitted by law and at the sole discretion of Producer, with no prior notice to me, any physical and/or psychological examinations (including but not limited to Hepatitis, HIV, and drug testing for adults) requested by Producer in Producer's sole and absolute discretion in connection with my possible selection for and participation in the Episode.  Such examinations, to the extent Producer chooses to conduct them, will be conducted by medical personnel of Producer's choosing. Producer shall have the right, but not the obligation, to share the results of any such tests or examinations with me.  I acknowledge that I may not be selected to participate or my participation may be discontinued at any time if in the sole and exclusive discretion of Producer and/or its medical experts the results of such tests indicate that I am not physically and/or psychologically fit to participate in the Episode.  I understand and agree that any physical and/or psychological assistance, examinations and/or sessions I may have with any medical personnel retained by or associated with the Episode, Producer and its agents, does not create a confidential relationship between myself and such medical personnel.  Accordingly, I acknowledge and consent to production doctors, psychologists, and other medical personnel communicating with Producer and the Network, and their designated agents any diagnoses, prognoses, medical information and/or opinions regarding me.  I hereby waive any physician-patient privilege I may have or that may arise with any physicians, psychologists, health care providers (including both physical and mental health care providers), social workers, health care institutions, insurers, and other individuals or entities as a result of my participation in the Participant selection process and/or the Episode, and I authorize the release to Producer and the Network of all records and information, written, verbal, electronic or otherwise, from any of the above persons and/or entities.  In addition, I agree to sign contemporaneously herewith, if not previously executed by me, a copy of the medical information authorization attached to this Agreement as Exhibit "A" and immediately following such execution, deliver copies of the authorization to my physician(s), psychologists(s), health care providers, etc.  I agree to sign any other authorizations that Producer, the Network or a health care provider deems necessary to facilitate the release of such records and information.  I specifically acknowledge that any injury, loss, claim, damage, or expense based upon or arising from any incomplete, inaccurate or negligently-performed medical, psychological and/or drug test or examination of me, any other Participant and/or any other person involved in any way with the Series, or the failure to perform any such test or examination, or the failure to inform me or any other person of the findings or contents of any such test or examination, or the disclosure to me or any other person of the findings or contents of any such test or examination, shall be included within the matters released, waived and indemnified against under paragraph V, below.  INITIAL HERE: ___

E.   **Medical/Psychiatric Treatment:**  If I am injured or become ill during the course of production of the Episode, I hereby authorize medical personnel designated by Producer or its agents to treat me for any such injury or illness.  If I am

4

incapacitated or unable to assist in my own care, I authorize the medical personnel designated by Producer or its agents to make treatment decisions on my behalf and I understand and agree that such treatment may include surgery and/or the administration of medication or any other treatment. Without in any way limiting anything herein, I further hereby release, indemnify, defend, discharge, relinquish and hold harmless the Released Parties as defined at paragraph V.B, below, from and against any and all claims, liens, actions, causes of action, suits, costs, attorney's fees, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise, arising out of or in connection with any medical and/or psychological care, assistance, treatment or services provided to me at any time whether such treatment or services are provided by health care professionals, paramedics, or any other person. **INITIAL HERE:** ⟨initials⟩

F.     **Background Investigation:** I authorize Producer to conduct one or more background check(s) on me and to investigate, access and collect information about any of the statements made by me in this Agreement, any Series Agreement and any other document that I have submitted and/or signed or do submit and/or sign in connection with my application to be selected as a Participant in the Episode. I authorize Producer to secure information about my experiences from my current and former employers, associates, family, friends, schools/educational institutions, government agencies and any references I have provided, and I authorize such parties to provide information concerning me. I hereby release all such parties (including Producer and the Network and each of their respective parent entities, subsidiary entities, affiliates, successors, licensees, designees and assigns, and their respective directors, officers, owners, employees, former employees, agents, contractors, partners, shareholders, attorneys, representatives and members, both jointly and separately) from any and all claims, liens, actions, causes of action, suits, costs, attorney's fees, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise) from all liabilities arising out of or in connection with any such investigation and/or provision of information. I specifically authorize investigation of my school/education record, employment record, medical record, and government record, including but not limited to my motor vehicle record, civil record, criminal record, military record and consumer report(s). In this regard, I acknowledge that I have read and understood the summary of my rights under the Fair Credit Reporting Act attached hereto as Exhibit "B," and I agree to sign contemporaneously herewith, if not previously executed by me, the disclosures and authorizations attached to this Agreement as Exhibit "C." Exhibit "D" and Exhibit "E." I acknowledge and agree that any such information obtained by Producer pursuant to this paragraph or otherwise may be used for purposes of selecting Participants in the Episode and in connection with the Series in general. **INITIAL HERE:** ⟨initials⟩

G.     **Isolation of Participants from Family and Friends:** I understand that if I am selected to participate in the Episode I could potentially be separated from my family, friends and my regular environment for the intended two (2) week production period (which may be extended for up to several consecutive weeks, although any such extension is not currently anticipated). These conditions may expose me to mental stress and potential financial loss. I voluntarily and fully accept and assume these risks and understand and acknowledge that the waivers, releases and indemnifications set forth in paragraph V of this Agreement expressly apply to these risks. Furthermore, if I am "swapped", I understand and agree that during the Production Period I shall not communicate in any way with my wife/husband and other Family members outside the presence of Producer's designated personnel, and, if I am a child or other member of the Family, I understand and agree that during the Production Period I shall not communicate in any way with the Wife from my Family (e.g., my mother, if she is "swapped" and if I am a child) without Producer's personnel being present. If I communicate with my spouse or said Wife, as applicable, in any

5

unauthorized manner, I understand and agree that I forfeit any Honorarium (as set forth in paragraph III.B. below) which might otherwise be payable to my Family. After the Production Period, I agree that I will not engage in any contact with any Participant outside my Family other than cordial and invited communications. INITIAL HERE: ⎰⎰

H.   **Minors**: If I am a parent of minor children residing in my home, I agree to obtain any necessary work permits or other documents required in accordance with all applicable laws relating to the involvement of minors in a production such as the Episode. That said, I understand, acknowledge and agree that there is no employment relationship whatsoever between any Participant, whether a minor or otherwise, and Producer, as set forth more fully below at paragraph VI.H. INITIAL HERE: ⎰⎰

II.   **GRANT OF RIGHTS; OWNERSHIP OF MATERIALS AND SERIES**: All rights that I have granted hereunder are referred to hereafter collectively as the "Granted Rights." is understood and agreed that the Granted Rights may be used by Producer, its licensees, successors, and/or assigns in any manner and by any means or means whether now known or unknown, in perpetuity throughout the universe and either facsimile, or with such portrayal, impersonation, simulation, imitation or other modification, in whole or in part, as Producer, its licensees, successors, and/or assigns, determine in their sole unfettered discretion.  Producer may freely assign any or all of the Granted Rights.  Notwithstanding the foregoing, I agree and acknowledge that neither Producer nor the Network shall have the obligation to exercise any of the Granted Rights (the exercise of such rights to be in Producer's and Network's sole and absolute discretion).  For good and valuable consideration including but not limited to my potential participation in the Episode, the receipt and sufficiency of which are hereby acknowledged, with full knowledge, I hereby grant to Producer the following exclusive, perpetual and irrevocable rights (i.e. the Granted Rights):

A.   **Filming and Taping**:  The right to film, videotape, audiotape, and/or otherwise record me in any manner by any camera, microphone or other device (whether digital, magnetic, film or otherwise) as described in this Agreement for use in and in connection with the Series.  All film, videotape, audiotape, digital media and/or other recording(s) produced hereunder referred to hereinafter as the "Footage".  I acknowledge and agree that Producer will be the sole and exclusive owner of all rights (including without limitation copyright and all extensions and renewals thereof) in any and all such Footage.  INITIAL HERE: ⎰⎰

B.   **Name, Likeness, Etc.; Promotional Activities**:  The unconditional right throughout the world in perpetuity to use, simulate or portray (and to authorize others to do so) or to refrain from using, simulating or portraying, whether or not in connection with the Series, any Episode or any portion thereof, my name, likeness (whether photographic or otherwise, including but not limited to previously existing personal photographs, videotapes and/or other images which I may provide to Producer and/or which may appear in my residence), voice, personality, personal identification and/or personal experiences, my life story, biographical data, incidents, situations and/or events which heretofore occurred or hereafter occur (collectively my "Likeness"), and any and all Footage containing my Likeness or any portion thereof, including without limitation the right to use, or to authorize others to use, any of the foregoing in or in connection with the Series, any episode or any portion thereof, and the distribution, exhibition, advertising, promoting, publicizing or other exploitation of the Series, any episode or any portion thereof by Producer, the Network, its operations, activities or programming services (including each of their licensees and assigns) and with any merchandise, tie-in, product, or service of any kind.  I understand that, in and in connection with the Episode and/or the Series, I may reveal and/or relate, and other parties (including, without limitation, other

Participants and Producer), may reveal and/or relate information about me of a personal, private, intimate, surprising, defamatory, disparaging, embarrassing or unfavorable nature, that may or may not be factual.  I further understand that my appearance, depiction and/or portrayal in the Episode and my actions and the actions of others displayed in the Episode, may be disparaging, defamatory, embarrassing or of an otherwise unfavorable nature and may expose me to public ridicule, humiliation or condemnation.  I acknowledge and agree that Producer shall have the right (a) to include any such information and any such appearance, depiction, portrayal, actions, and statements in the Episode as edited by Producer in its sole discretion, and (b) to broadcast, exhibit and/or otherwise exploit the Series, any episode or any portion thereof containing any such information and any such appearance, depiction, portrayal of actions.  The waivers, releases and indemnifications set forth below at paragraph V of this Agreement expressly apply to any such inclusion and exploitation.  I acknowledge and understand that the Footage and the creation, broadcast, exhibition and/or other exploitation thereof may be considered a serious invasion of my privacy and that personal details and background information concerning me may be revealed to the public as part of the Episode and/or the Series.  With full knowledge and understanding of the foregoing, I hereby give my express, unconditional and irrevocable permission to Producer to fully exploit the Footage and my Likeness and I hereby knowingly and voluntarily waive any right to privacy that I might have in connection therewith.  I further acknowledge and understand that my participation in the Episode may lead to emotional strains and pressures on me and my family, before, during and/or after my participation in the Episode.  Notwithstanding the foregoing, I am participating in the Series voluntarily and free of any coercion or duress.  The waivers, releases and indemnifications set forth below at paragraph V expressly apply to the creation, broadcast, exhibition and exploitation of the Footage and my Likeness, as well as any emotional pressures and strains on me and my family, as described above.  **INITIAL HERE:** ___

C.    **Participant Personal Photographs, Film and Video:**  I understand and agree that during Episode production I shall not, under any circumstances, shoot or take any photographs, film or video without obtaining Producer's prior written approval.  If I have previously developed said film or video, I shall provide Producer with all originals and copies of such exposed film (negatives and prints) and/or video for Producer's and the Network's use in the Episode as a Granted Right, the advertising and promotion of the Episode and/or the Series and any and all ancillary uses of the Episode and/or the Series (e.g., books, calendars, videos, CD-ROM).  Producer and the Network shall be entitled to retain possession of the film or video.  I understand and agree that no additional compensation, payments, residuals, reuse fees or otherwise shall be made to me with respect to Producer's or the Network's use of such photographs, film or video and I shall not have the right to exhibit, distribute or exploit such photographs or film.  For the avoidance of doubt, any and photographs, film and/or video as described herein shall fall within the definition of "Materials" as set forth below at paragraph II.D, below.  **INITIAL HERE:** ___

D.    **Ownership of Rights:**  Without limiting any of the rights I have granted herein, I acknowledge and agree that all of the results and proceeds of my granting of rights hereunder, including, without limitation, all Footage containing me and/or my Likeness or any portion thereof and in any and all performances, compositions, stories whether factual or fictional, songs, statements or actions made by me, information given by me, captured on any such Footage and any and all artistic, literary, dramatic, musical, photographic (still or moving, taken during the Episode preparation, pre-production or production period) and other materials which I may create, utter, express, perform or furnish hereunder (collectively, the "Materials"), are being specially commissioned by Producer as contribution to an audiovisual work and, accordingly, the copyright (and all renewals and extensions thereof) and all

7

other proprietary rights, title and interest in such Materials shall be owned by Producer as the author of such Materials, which shall be considered "works-made-for-hire," pursuant to the United States Copyright Act.  If any of such Materials are not deemed "works-made-for-hire," I hereby irrevocably assign to Producer the entire copyright and all other rights in and to such Materials (and where any such Materials are not in existence at the date hereof, by way of present assignment of future copyright), throughout the universe for the full period of copyright and all renewals and extensions thereof, and thereafter for the maximum period permitted by law.

Without limiting the foregoing, Producer shall have the exclusive right to copy, reproduce, change, add to, delete from, translate, distribute, transmit, exhibit, advertise, use and otherwise exploit the Materials or any part thereof, to make or authorize any ancillary use thereof (including, without limitation, the distribution or licensing of the Materials for syndication, commercial and non-commercial publishing, print publication, home video, sound recordings, internet/on-line and merchandising) and to advertise and promote the foregoing, in perpetuity throughout the universe by any and all means and in any and all media whether now known or hereafter invented or devised (including without limitation television, (whether free, pay, cable, satellite or otherwise), theatrical, non-theatrical, cassettes, disc, and other home video devices, the Internet and other on line or computer-assisted media and print media) and to authorize others to do any of the foregoing.  Producer shall have the right to make any use it desires of any Materials (including, without limitation, the Episode and my performance in the Episode and/or the Materials or any portion thereof), without the payment of any compensation.  All materials that I use in connection with the Episode shall be subject to Producer's prior approval.

I hereby waive unconditionally and irrevocably the benefit of any provision of law known as "Moral Rights" or similar laws now or hereafter prevailing in any part of the world which might otherwise apply to the Materials and I will not assert any Moral Rights against Producer or the Network.  The Materials and all rights therein, including, without limitation, any so-called rental and lending rights pursuant to any European Economic Community ("EEC") directives and/or enabling or implementing legislation, laws or regulations enacted by member nations of the EEC, shall be the sole property of Producer and may be distributed, exhibited, broadcast and otherwise used and/or exploited, in whole or in part, in perpetuity, in any manner and through any media as Producer may elect.  I agree that any telecast, exhibition or other exploitation of the Materials or any rights therein, whether as part of the Episode, the Series or otherwise, will not entitle me to receive any compensation.  **INITIAL HERE:** \_\_\_\_

**B.    Public Domain Material:**  Nothing in this Agreement shall ever be construed to restrict, diminish or impair the rights of either Producer or the Participants to utilize freely, any work or media, any story, idea, plot, theme, sequence, scene, episode, incident, name, characterization or dialogue which may be in the public domain, from whatever source.  **INITIAL HERE:** \_\_\_\_

**III.   PERFORMANCE/PUBLICITY/EXCLUSIVITY:**

**A.    Performance:**  Neither Producer nor the Network shall have any obligation to utilize my participation in the Episode.  Further, neither Producer nor the Network shall have any obligation to produce or exhibit the Episode, the Series, or to use or otherwise exploit the results and proceeds of my participation in the Episode and/or the Series.  I agree that my appearance as a Participant in the Episode does not constitute a performance within the parameters of a performing arts union or guild (for example, but not by way of limitation, the American Federation of Television and Radio Artists or "AFTRA") and under no circumstances will any

compensation, such as payment, residual, royalty, reuse or similar payments, be payable to me or on my behalf regardless of the manner and the extent to which Producer or its designees, licensee and assigns elect to exploit the Episode and/or the Series or the results and proceeds of my services hereunder.  In conjunction with the above, I hereby warrant and certify that as of the date hereof I have never appeared as a paid performer and will not appear as a paid performer prior to or during my participation in connection with the Episode: (1) on a nationally broadcast free or basic cable television program (other than the Episode); (2) in a theatrical motion picture; (3) in a free, pay or basic cable television movie of the week; (4) in a taped or filmed commercial exhibited on a national basis; or (5) in a first class live stage production produced by a member of the League of American Theaters and Producers or the League of Resident Theaters.  **INITIAL HERE:**

B.   **Honorarium:**

(1)   If my Family is selected to participate in the Episode and provided that (a) no one in my Family is in breach of this Agreement or the Series Agreements, (b) Producer has not discontinued or suspended my Family's participation in the Episode (that is, the Family has completed its participation in the Episode), and (c) all members of my Family have participated in the spirit of the Series, then Producer shall pay to each Family an honorarium ("Honorarium") in the amount of Twenty Thousand Dollars ($20,000), payable jointly to both the husband and wife or one of them, as they may designate to Producer in writing. The honorarium is not wages and shall not be deemed to create or imply an employment relationship between me nor any member of my Family), on one hand, and Producer, on the other hand. No other Participant shall be entitled to an honorarium or other monetary compensation of any kind.  The honorarium shall be payable within a reasonable period of time following the initial Network broadcast exhibition of the Series episode featuring my Family, if ever.  If I am the husband or wife, I agree to complete and deliver to Producer all tax and related documentation required prior to payment of the Honorarium. I agree that I and my Family shall be responsible for paying any and all Federal, State, local and other taxes on the honorarium, and that Producer has not provided (and will not be expected to provide) me any tax or legal advice regarding the Honorarium or otherwise.  **INITIAL HERE:**

(2)   Without limiting any other provision of this Agreement, the "swapped Wife" (as such term is used in this Agreement), shall be required to strictly enforce her designated "Rules" (as set out by her at the Rule Change Ceremony) regarding conduct of the members of her "swapped" family at all times during Series production.  Failure to use all good faith efforts to enforce such Rules shall lead to the forfeiture of any Honorarium otherwise due to any family under the terms of the Agreement.

(3)   It is hereby understood and agreed that, during production of the Series, no "swapped Wife" shall have contact or communications (by phone, email, or any other means) with her real home or family members (or friends) unless they first obtain prior permission from Producer and Producer is present to observe such communication(s).  While exceptions to this rule will be made for emergencies on a case by case basis at Producer's sole discretion, any failure to obtain Producer's permission prior to each and every such contact(s) (or attempted contact(s)) will lead to the forfeiture of any Honorarium otherwise due to any family under the terms of the Agreement.

(4)   It is also hereby understood and agreed the Honorarium payable to any family in accordance with this Agreement shall be deemed a reimbursement for any of the following, any and all "lost wages" or other similar recompense any member of your family may suffer any inconvenience any member of the family may suffer, costs

9

or expenses incurred by the family for atypical utility bills (e.g., gas, electric, etc), or other similar "extra-ordinary" costs of household operation that may be incurred by virtue of Series production at the family home or that may otherwise result from the production of the Series. I, on behalf of my entire family, agree the Honorarium shall be the only sum of money, fee or other form of consideration or cost reimbursement my family will receive (or shall otherwise be entitled to) as a result (and to cover payment) of such "extra-ordinary" costs of household operation or otherwise resulting from my family's participation in the Series.

C.    **Publicity and Promotion**: From the date of this Agreement and continuing for twelve (12) months following the date of the first network exhibition of any episode of the Series in which I appear, if and when requested by Producer, I agree to be available for publicity interviews, publicity photograph sittings, still photographs on-the-air and other publicity activities. INITIAL HERE: [initials]

D.    **Reunion**. Producer shall have an exclusive and irrevocable right to film and/or videotape reunion episode (the "Reunion") in which I agree to participate for no additional compensation. Any such Reunion will be produced within three (3) years from the date of the first network exhibition of any episode of the Series in which I appear. If Producer and/or the Network elect(s) to film/tape the Reunion, then Producer shall notify me of such decision at least thirty (30) days prior to the commencement date of principal photography or taping of the Reunion. I agree to participate in the production of the Reunion for a period of time determined in Producer's sole discretion (such time will be subject to my then existing professional commitments) (the "Reunion Production Period") at a location, which Producer will designate at a later date. I hereby grant to Producer all rights in the Reunion episode(s) as if the same had been included as a regular Series episode and all other applicable paragraphs of this Agreement shall apply thereto. Any and all Footage taken in and/or in connection with the production of such Reunion episode and my Likeness or any portion thereof and my performance as it may appear therein shall fall within the definition of "Materials" as set forth above at paragraph II.D and Producer shall have all rights therein as set forth in paragraph II.D. Producer agrees that if Producer elects to require my participation in the Reunion (though it is not obligated to do so), it shall provide transportation for me to and from the location of any Reunion, as well as meals and lodging at the location. INITIAL HERE: [initials]

E.    **Cooperation and Access**: I hereby agree to grant Producer access to any place, to the extent within my control, and to cooperate fully with Producer in obtaining access to other places involved with me or my services and participation in the Episode. I further agree to refrain from seeking refuge in places where the Episode cameras are not allowed access. If required, I further agree to cooperate fully with Producer in obtaining access to, and executed releases from, other persons, including my parents, siblings, in-laws, friends, neighbors, and co-workers. I shall provide such executed releases to Producer within three (3) days after Producer tapes, shoots or records any such material in any such location that may require such a release, including but not limited to photographs, posters or other artwork which may be displayed in my residence which is protected by copyright. In the event I am unable or unwilling to obtain a release for any copyrighted material, I agree to remove such material from my residence during the Production Period. If I am the parent of a minor Participant, I shall do any and all things necessary and reasonably required by Producer to assist in the full and complete performance by the Minor of the Minor's obligations with regard to the Series, including without limitation signing any and all releases, guarantees, and/or approvals of the Minor's agreements with regard to the Series. INITIAL HERE: [initials]

F.    **Exclusivity**:  I agree that for a period commencing on the date of this Agreement and concluding one (1) year after the date of the initial exhibition of the final episode of the Series, I shall not appear on or authorize production of or participate in any way with any other television programming, radio programming, print media, on-line services, or any other media outlet now known or hereafter devised, or in any commercials or advertisements without Producer's and the Network's prior written consent.  **INITIAL HERE:**

IV.    **ACKNOWLEDGMENT AND ASSUMPTION OF RISK**

A.    **Knowledge, Awareness, and Assumption of Risks of Personal Injury and Property Loss**:  I hereby acknowledge that I have voluntarily and knowingly decided to participate in the Episode without having been coerced or convinced by Producer or any other party to do so and with full knowledge, appreciation and understanding of the dangers and personal risks involved.  I hereby agree to accept any and all risks attributable to my participation in the Episode, including but not limited to, illness, serious personal injury, death and/or property loss, including, but not limited to, the following risks:  **INITIAL HERE:**

(1)    THAT BY PARTICIPATING IN THE EPISODE I WILL, OVER A PERIOD OF TIME, BE INTERACTING WITH ONE OR A GROUP OF PEOPLE WHO ARE PRESENTLY STRANGERS TO ME. NEITHER PRODUCER NOR THE NETWORK MAKE ANY REPRESENTATIONS OR OFFERS ANY ASSURANCES AS TO THE CHARACTER, BACKGROUND, HISTORY, ACTIONS, DEMEANOR OR MENTAL, EMOTIONAL OR PHYSICAL CONDITION OR HEALTH OF ME, OF ANY OTHER PARTICIPANT OR ANY OTHER PERSON INVOLVED IN ANY WAY WITH THE SERIES AND I ACKNOWLEDGE THAT I MUST ASSUME THE RISK OF ANY ENCOUNTER OR INTERACTION WITH SUCH PERSONS. I SPECIFICALLY ACKNOWLEDGE THAT ANY INJURY, LOSS, CLAIM, DAMAGE, OR EXPENSE BASED UPON OR ARISING FROM ANY INCOMPLETE, INACCURATE OR NEGLIGENTLY-PERFORMED BACKGROUND CHECK INTO THE BACKGROUND, HISTORY, ACTIONS, CHARACTER, DEMEANOR OR MENTAL, EMOTIONAL OR PHYSICAL CONDITION OR HEALTH OF ME, ANY OTHER PARTICIPANT AND/OR ANY OTHER PERSON INVOLVED IN ANY WAY WITH THE SERIES, OR THE FAILURE TO PERFORM ANY SUCH BACKGROUND CHECK, OR THE FAILURE TO INFORM ME OR ANY OTHER PERSON OF THE FINDINGS OR CONTENTS OF ANY SUCH BACKGROUND CHECK, OR THE DISCLOSURE TO ME OR ANY OTHER PERSON OF THE FINDINGS OR CONTENTS OF ANY SUCH BACKGROUND CHECK, SHALL BE INCLUDED WITHIN THE MATTERS RELEASED, WAIVED AND INDEMNIFIED AGAINST UNDER PARAGRAPH V BELOW. **INITIAL HERE:**

(2)    I ACKNOWLEDGE AND AGREE THAT MY PARTICIPATION HEREUNDER MAY PRESENT CERTAIN RISKS TO ME, AND I HEREBY ASSUME ANY AND ALL RISKS ASSOCIATED WITH MY PARTICIPATION IN THE EPISODE, INCLUDING, WITHOUT LIMITATION, THE RISK OF DEATH, PHYSICAL AND EMOTIONAL INJURY AND/OR DISABILITY, MINOR AND/OR SEVERE BODILY HARM, PHYSICAL AND MENTAL ILLNESS, AND PROPERTY LOSS, WHICH ARISE BY ANY MEANS, INCLUDING WITHOUT LIMITATION: ANY INSTRUCTION BY PRODUCER; ACTS, OMISSIONS, RECOMMENDATIONS OR ADVICE GIVEN BY PRODUCER, OR PRODUCER'S AGENTS, EMPLOYEES OR OTHER PERSONS OR ENTITIES AFFILIATED WITH THE SERIES; PARTICIPATION IN INHERENTLY DANGEROUS ACTIVITIES INCLUDING, WITHOUT LIMITATION, DISEASE OR ILLNESS TRANSMITTED BY CLOSE CONTACT WITH OTHERS, ANY SPORTS OR OTHER POTENTIALLY HAZARDOUS ACTIVITIES (FOR EXAMPLE, HIKING, SWIMMING, CAMPING, JOGGING, WATER-SKIING, SNOW-SKIING, ICE-SKATING, ROLLERBLADING, HORSEBACK RIDING, SURFING, AND RIDING IN WATERCRAFT, AIRCRAFT AND LAND VEHICLES); LATENT OR APPARENT DEFECTS OR CONDITIONS IN ANY EQUIPMENT USED IN THE EPISODE; THE USE OR OPERATION BY ME OR OTHERS OF SAID EQUIPMENT; MY OWN ACTIONS OR INACTIONS AND/OR THE ACTIONS OR INACTIONS OF OTHER PEOPLE, INCLUDING WITHOUT LIMITATION OTHER PARTICIPANTS ON THE SERIES AND/OR PRODUCER OR THE NETWORK AND/OR THEIR RESPECTIVE EMPLOYEES, STAFFS, INDEPENDENT CONTRACTORS, OR OTHER PERSONS RETAINED IN OR IN CONNECTION WITH THE EPISODE AND/OR THE SERIES; WEATHER OR OTHER NATURAL CONDITIONS; THE NATURE OF TRAVEL INCLUDING, WITHOUT LIMITATION, LATENT DEFECTS, WEATHER CONDITIONS; AND HUMAN ERROR; MY PHYSICAL CONDITION; MY OWN ACTS OR OMISSIONS; FIRST-AID, EMERGENCY TREATMENT OR OTHER SERVICES RENDERED TO ME OR OTHERS; CONSUMPTION OF

11

FOOD OR DRINK; ALLERGIC REACTIONS; TRAVEL TO AND FROM LOCATIONS (INCLUDING ANY CLAIM BASED UPON PRODUCER'S FAILURE TO SUPERVISE, INSPECT OR INVESTIGATE THE MEANS AND METHODS OF MY TRANSPORTATION); THE ACCOMMODATIONS (INCLUDING ANY CLAIM BASED ON PRODUCER'S FAILURE TO INSPECT OR INVESTIGATE SUCH ACCOMMODATIONS PRIOR TO ANY USE OF THEM); ANY LOSS OR DAMAGE TO PROPERTY (PERSONAL OR OTHERWISE) OWNED BY ME OR ANY THIRD PARTY.  I ACKNOWLEDGE THAT THE FOREGOING IS NOT AN EXHAUSTIVE LIST OF THE RISKS, HAZARDS AND DANGERS TO WHICH I WILL BE EXPOSED AS A RESULT OF THE EPISODE ACTIVITIES.  I FURTHER ACKNOWLEDGE THAT PRODUCER CANNOT GUARANTEE MY SAFETY DURING THE PRODUCTION OF THE EPISODE.  INITIAL HERE: ___

　　　　(3)    I HEREBY AGREE TO VOLUNTARILY ACCEPT AND ASSUME ANY AND ALL SUCH RISKS AS WELL AS ANY RISKS NOT MENTIONED HEREIN THAT ARE IN ANY WAY ASSOCIATED WITH MY PARTICIPATION IN THE EPISODE AND THE TAPING, PRODUCTION, USE, EDITING, DISTRIBUTION, EXHIBITION, LICENSING, PROMOTION SUBSEQUENT OR SIMULTANEOUS BROADCAST, WEBCAST OR OTHER DISSEMINATION OF THE EPISODE AND/OR THE SERIES, INCLUDING, WITHOUT LIMITATION ANY CLAIMS, ACTIONS, OR CAUSES OF ACTION FOR WRONGFUL DEATH, NEGLIGENCE, AND/OR OTHER FAULT EITHER ACTIVE OR PASSIVE, PERSONAL INJURY, DEFAMATION, LIBEL, SLANDER, DISPARAGEMENT, FALSE LIGHT, RIGHT OF PUBLICITY, INVASION OF PRIVACY, EMBARRASSING PRIVATE FACTS, FRAUD, BREACH OF CONTRACT, MORAL RIGHTS, AND NEGLIGENT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.  INITIAL HERE: ___

　　　　(4)    I UNDERSTAND THAT PRODUCER, DIRECTLY AND/OR THROUGH INDEPENDENT CONTRACTORS, MAY PROVIDE VARIOUS SERVICES, EQUIPMENT AND/OR OTHER GOODS IN CONNECTION WITH THE EPISODE AND ITS PARTICIPANTS. THESE SERVICES, EQUIPMENT AND/OR OTHER GOODS MAY INCLUDE, BUT ARE NOT LIMITED TO: TRANSPORTATION TO, FROM, AND ABOUT THE SITES OF THE SERIES; PROVISION OF FOOD AND/OR WATER; ACCOMMODATIONS; FURNISHING EQUIPMENT AND OUTFITTING FOR EVENTS, THE SUPERVISION OF OTHER ACTIVITIES, AND GIFTS.  I ACKNOWLEDGE THAT NEITHER PRODUCER NOR THE NETWORK, NOR ANY CONTRACTOR, EMPLOYEE OR OTHER PERSON PROVIDING SERVICES, EQUIPMENT AND/OR OTHER GOODS IN CONNECTION WITH THE EPISODE AND/OR THE SERIES HAS MADE ANY WARRANTIES WHATSOEVER IN RESPECT TO ANY SERVICES, EQUIPMENT OR OTHER GOODS FURNISHED IN CONNECTION WITH THE EPISODE, THE SERIES OR OTHERWISE USED BY ANY PARTICIPANTS, AND THAT THERE ARE NO WARRANTIES OF ANY KIND FROM ANYONE REGARDING THE SERVICES, EQUIPMENT OR OTHER GOODS FOR ANY PURPOSE IN CONNECTION WITH THE EPISODE AND/OR THE SERIES OR OTHERWISE.  I HEREBY WAIVE ANY RIGHT I MIGHT OTHERWISE HAVE TO WARNINGS OR INSTRUCTIONS REGARDING ANY ASPECT OF THE EPISODE AND/OR THE SERIES OR SERVICES, EQUIPMENT AND/OR GOODS UTILIZED IN CONNECTION THEREWITH. I SPECIFICALLY ACKNOWLEDGE THAT ANY AND ALL RISKS ASSOCIATED WITH ANY SERVICES, EQUIPMENT AND/OR OTHER GOODS I MAY RECEIVE OR USE IN CONNECTION WITH THE SERIES AND ANY INJURY, CLAIM, DAMAGE, LOSS OR EXPENSE CAUSED THEREBY OR OTHER CONSEQUENCES RESULTING THEREFROM SHALL BE INCLUDED WITHIN THE MATTERS RELEASED, WAIVED AND INDEMNIFIED AGAINST UNDER PARAGRAPH V BELOW.    I FURTHER UNDERSTAND AND AGREE THAT I AM SOLELY RESPONSIBLE FOR OBTAINING AND PAYING FOR ANY LIFE, DISABILITY, ACCIDENT, PROPERTY OR OTHER INSURANCE I MAY DESIRE IN CONNECTION WITH ANY ACTIVITIES I UNDERTAKE ON OR IN CONNECTION WITH THE EPISODE AND/OR THE SERIES, AND PRODUCER IS NOT RESPONSIBLE FOR PROVIDING SUCH INSURANCE.  INITIAL HERE: ___

　　　　(5)    I HEREBY ACKNOWLEDGE AND UNDERSTAND THAT AS PART OF THE EPISODE AND/OR THE SERIES, PRODUCER MAY, FROM TIME TO TIME, CHOOSE TO SUGGEST CIRCUMSTANCES, SETTINGS AND EVENTS (INCLUDING MY BEHAVIOR AND THAT OF OTHER PARTICIPANTS) IN ANY MANNER (FOR EXAMPLE, I OR OTHER PARTICIPANTS MAY BE ASKED TO SAY OR DO THINGS WHICH HEIGHTEN THE EMOTIONAL OR DRAMATIC IMPACT OF THE EPISODE AND/OR THE SERIES, BUT WHICH ACTS OR ACTIONS ARE RENDERED SOLELY AT THE REQUEST OF PRODUCER AND MAY NOT OTHERWISE HAVE OCCURRED OF MY OR ANOTHER PARTICIPANT'S OWN VOLITION OR WHICH MAY BE CONTRARY TO MY OWN FEELINGS OR FACTUAL CIRCUMSTANCES).  I ACKNOWLEDGE AND AGREE THAT I MAY NOT BE AWARE WHEN PRODUCER, ANOTHER PARTICIPANT OR A THIRD PARTY IS ENGAGING IN SUCH SUGGESTED CONDUCT AND THAT SUCH CONDUCT MAY CAUSE ME EMBARRASSMENT, PHYSICAL AND/OR

EMOTIONAL DISTRESS.  I NONETHELESS CHOOSE TO PARTICIPATE IN THE EPISODE AND ASSUME ANY AND ALL SUCH RISKS IN CONNECTION THEREWITH.  INITIAL HERE: ___

(6)    I ACKNOWLEDGE THAT PRODUCER HAS ADVISED ME TO CONSULT AND THAT I HAVE CONSULTED WITH MY OWN PHYSICIAN REGARDING THE ADVISABILITY FROM A PHYSICAL AND EMOTIONAL HEALTH PERSPECTIVE OF MY POTENTIAL PARTICIPATION IN THE EPISODE AND THAT ANY INJURIES ALLEGEDLY CAUSED THEREBY ARE HEREBY SPECIFICALLY INCLUDED WITHIN THE MATTERS RELEASED, WAIVED AND INDEMNIFIED AGAINST UNDER PARAGRAPH V BELOW.  I FURTHER ACKNOWLEDGE PRODUCER IS NOT REQUIRED TO PROVIDE ME WITH ANY MEDICAL OR PSYCHOLOGICAL TREATMENT OR PAY FOR ANY MEDICAL OR OTHERS TREATMENT EXPENSES SHOULD I BECOME SICK OR INJURED AND I MUST LOOK TO MY OWN INSURANCE TO COVER THE COST OF ANY MEDICAL OR OTHER TREATMENT EXPENSES I INCUR.  INITIAL HERE: ___

(7)    I ACKNOWLEDGE THAT INTERVIEWS ON OR IN CONNECTION WITH THE EPISODE MAY CONSIST OF ANOTHER PARTICIPANT'S STATEMENTS AND/OR MY STATEMENTS ABOUT OTHER PARTICIPANTS, PERSONAL RELATIONSHIPS AND, PERHAPS, THE OPINIONS AND STATEMENTS OF MY FAMILY AND/OR FRIENDS AND OTHER PEOPLE CONNECTED WITH THE EPISODE AND/OR THE SERIES, AND THAT SOME OF THESE STATEMENTS AND/OR STATEMENTS BY THE HOST OF THE SERIES (IF ANY), PRODUCER OR PRODUCER'S EMPLOYEES OR AGENTS OR OTHERS MAY BE CONSIDERED SURPRISING, HUMILIATING, EMBARRASSING, DEROGATORY, DEFAMATORY, OR OTHERWISE OFFENSIVE OR INJURIOUS TO ME, THE VIEWING AUDIENCE, PRODUCER OR PRODUCER'S EMPLOYEES OR AGENTS AND/OR OTHER THIRD PARTIES.  ANY SUCH STATEMENT OR STATEMENTS BY ME AND ANY INJURIES ALLEGEDLY CAUSED THEREBY ARE HEREBY SPECIFICALLY INCLUDED WITHIN THE MATTERS RELEASED, WAIVED AND INDEMNIFIED AGAINST UNDER PARAGRAPH V BELOW.  FURTHER, ANY SUCH STATEMENT OR STATEMENTS BY ANOTHER PARTICIPANT (IF ANY), THE VIEWING AUDIENCE, THE SERIES HOST (IF ANY), PRODUCER OR PRODUCER'S EMPLOYEES OR AGENTS AND/OR OTHER THIRD PARTY ARE HEREBY SPECIFICALLY INCLUDED WITHIN THE MATTERS RELEASED, WAIVED AND INDEMNIFIED AGAINST UNDER PARAGRAPH V BELOW.  INITIAL HERE: ___

(8) I HAVE BEEN INFORMED AND I FULLY UNDERSTAND THAT ANY ADVICE FROM PRODUCER'S EMPLOYEES OR OTHER REPRESENTATIVES, WHICH MAY BE GIVEN TO ME ON OR IN CONNECTION WITH THE EPISODE, IS FOR ENTERTAINMENT ONLY.  I AM FREE TO REJECT ANY SUCH ADVICE IN WHOLE OR IN PART, AND SHOULD I FOLLOW ALL OR ANY PART OF SUCH ADVICE, I SHALL DO SO ENTIRELY AT MY OWN RISK.  ANY ACTUAL OR ALLEGED CONSEQUENCES OF MY FOLLOWING SUCH ADVICE SHALL BE INCLUDED WITHIN THE MATTERS RELEASED, WAIVED AND INDEMNIFIED AGAINST UNDER PARAGRAPH V BELOW.  I FURTHER UNDERSTAND AND ACKNOWLEDGE THAT I MAY EXPERIENCE ONE OR MORE SURPRISES (E.G., A SECRET OR OTHER UNKNOWN FACT MAY BE REVEALED TO ME) IN CONNECTION WITH MY APPEARANCE ON THE EPISODE, AND SUCH SURPRISE SHALL BE INCLUDED WITHIN THE MATTERS RELEASED, WAIVED AND INDEMNIFIED AGAINST UNDER PARAGRAPH V BELOW.  INITIAL HERE: ___

B.    Right to Withdraw:  SUBJECT TO PARAGRAPH V.D. BELOW, I ACKNOWLEDGE THAT I ALWAYS HAVE THE OPTION TO DISCONTINUE MY PARTICIPATION IN THE EPISODE AND TO WITHDRAW AS A PARTICIPANT FROM THE EPISODE AT ANY TIME (WHETHER BECAUSE OF PRODUCER'S DISCLOSURES TO ME OR FOR ANY OTHER REASON), SUBJECT TO THE REASONABLE TIME AND LOGISTIC RESTRAINTS NECESSARY TO ASSIST ME IF I WITHDRAW WHILE ON LOCATION.  I ALSO ACKNOWLEDGE THAT PRODUCER MAY PROVIDE ADDITIONAL DISCLOSURES TO ME REGARDING THE VARIOUS RISKS TO WHICH I MIGHT BE SUBJECTED IN CONNECTION WITH MY PARTICIPATION IN THE EPISODE AND THAT PRODUCER MAY ASK ME TO SIGN ADDITIONAL RELEASES AND WAIVERS RELATING TO THOSE RISKS. I UNDERSTAND THAT IF I REFUSE TO SIGN ANY SUCH RELEASES AND WAIVERS WHICH PRODUCER REQUIRES AND/OR IF I ELECT TO WITHDRAW FROM THE EPISODE, THEN I CAN NO LONGER PARTICIPATE IN THE EPISODE. I UNDERSTAND AND AGREE THAT NO SUCH DISCONTINUATION OR WITHDRAWAL WILL AFFECT ANY OF THE RIGHTS I HAVE ASSIGNED TO PRODUCER OR ANY OF MY COVENANTS, AGREEMENTS, WAIVERS, RELEASES OR INDEMNIFICATIONS IN THIS AGREEMENT.  IF I DISCONTINUE MY PARTICIPATION IN THE EPISODE, PRODUCER AND/OR THE NETWORK MAY MAKE ANY EXPLANATION, ANNOUNCEMENT, ON-AIR OR OTHERWISE, WHICH PRODUCER AND/OR THE NETWORK MAY IN THEIR SOLE DISCRETION CHOOSE, AND NEITHER I NOR MY

13

FAMILY SHALL BE ENTITLED TO BE PAID THE HONORARIUM. IN ADDITION, IF I DISCONTINUE MY PARTICIPATION IN THE EPISODE, I ACKNOWLEDGE AND AGREE THAT I SHALL BE LIABLE TO PRODUCER FOR ANY AND ALL DAMAGES SUFFERED BY PRODUCER RESULTING FROM THE DISCONTINUANCE OF MY PARTICIPATION IN THE EPISODE, INCLUDING, WITHOUT LIMITATION, ALL COSTS AND EXPENSES INCURRED BY PRODUCER IN CONNECTION WITH MY PREPARATION FOR AND PARTICIPATION IN THE EPISODE. INITIAL HERE:

   C.    No Representations or Warranties from Producer: I ACKNOWLEDGE THAT PRODUCER HAS MADE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER TO ME REGARDING OTHER PARTICIPANTS, INCLUDING BUT NOT LIMITED TO THE MENTAL OR PHYSICAL HEALTH OF SUCH PARTICIPANTS OR THEIR GENDER, MARITAL STATUS, CAREER, FINANCIAL HISTORY, EDUCATION, OR MEDICAL/EMOTIONAL OR PERSONAL HISTORY. I UNDERSTAND AND ACKNOWLEDGE THAT PRODUCER MAY OR MAY NOT SCREEN OR CONDUCT BACKGROUND CHECKS OR INVESTIGATIONS OF EVERY PARTICIPANT OR OF ANY OTHER PERSON WHO APPEARS, OR MAY APPEAR, ON THE EPISODE (INCLUDING AN INVESTIGATION OF ANY PERSON'S MEDICAL, PROFESSIONAL OR CRIMINAL HISTORY) AND HAS NO DUTY TO CONDUCT SUCH INVESTIGATION. IN THE EVENT PRODUCER CHOOSES, IN ITS SOLE DISCRETION, TO CONDUCT BACKGROUND CHECKS ON OTHER PARTICIPANTS OR ON ANY OTHER PERSON WHO APPEARS, OR MAY APPEAR, ON THE EPISODE, PRODUCER HAS NO OBLIGATION TO SHARE THE RESULTS OF SUCH BACKGROUND CHECKS WITH ME.

   I FURTHER UNDERSTAND AND ACKNOWLEDGE THAT PRODUCER CANNOT CONTROL, AND IS NOT RESPONSIBLE FOR, THE EVENTS WHICH TRANSPIRE, OR ALLEGEDLY TRANSPIRE, ON ANY ACTIVITIES OR DURING ANY OTHER INTERACTION BETWEEN MYSELF AND OTHER PARTICIPANTS OR ANY OTHER PERSON ON THE EPISODE.

   I AGREE TO MAINTAIN MY BEHAVIOR DURING THE ACTIVITIES AND ANY OTHER INTERACTIONS WITH ANY PERSON ON THE EPISODE IN ACCORDANCE WITH ALL APPLICABLE LAWS AND GENERALLY ACCEPTED SOCIAL PRACTICES. IF I AM PARTICIPATING AS THE GUEST WIFE, I WILL NOT BE ASKED OR EXPECTED TO, NOR WILL I, HAVE ANY INTIMATE OR OTHER PHYSICAL CONTACT WITH ANY MEMBERS OF THE HOST FAMILY. IF I AM PARTICIPATING AS A MEMBER OF A HOST FAMILY, I WILL NOT BE ASKED OR EXPECTED TO, NOR WILL I, HAVE ANY INTIMATE OR OTHER PHYSICAL CONTACT WITH THE GUEST WIFE.

   I UNDERSTAND THERE ARE RISKS IN ANY SOCIAL INTERACTION, INCLUDING BUT NOT LIMITED TO, THE POSSIBILITY OF COMMUNICABLE DISEASES (E.G., CHICKEN POX, FLU, HEPATITIS, ETC.). I EXPRESSLY AGREE AND AFFIRM TO PRODUCER THAT I WILL CONDUCT MYSELF WITH THE CARE, GOOD JUDGMENT AND DISCRETION THAT I WOULD ORDINARILY EXERCISE IN SIMILAR SITUATIONS. IN ADDITION, I ACKNOWLEDGE THAT I, AT MY SOLE ELECTION, MAY DECIDE TO PARTICIPATE IN AN ACTIVITY THAT INVOLVES A RISK OF INJURY, EMBARRASSMENT, DANGER OR DEATH. I ASSUME ALL RISK ASSOCIATED WITH SUCH ACTIVITY AND UNDERSTAND THAT PRODUCER UNDERTAKES NO RESPONSIBILITY OR LIABILITY OF ANY KIND OR NATURE FOR ANY ADVERSE EFFECTS OR PROBLEMS OF WHATEVER KIND OR NATURE, WHICH I MAY EXPERIENCE AS A RESULT OF UNDERGOING SUCH ACTIVITY. I AGREE THAT ANY INJURIES, DAMAGE OR HARM ALLEGEDLY SUFFERED BY ME IN CONNECTION WITH ANY ACTIVITIES, ANY OTHER INTERACTION BETWEEN MYSELF AND OTHER PARTICIPANTS OR ANY OTHER PERSON ON OR CONNECTED WITH THE EPISODE AND/OR THE SERIES, OR ANY OTHER ACTIVITY IN CONNECTION WITH THE EPISODE OR THE SERIES, ARE HEREBY SPECIFICALLY INCLUDED WITHIN THE MATTERS RELEASED UNDER PARAGRAPH V BELOW AND INDEMNIFIED AGAINST UNDER PARAGRAPH V BELOW. I HEREBY WAIVE ANY RIGHT, CLAIM OR DISPUTE I MIGHT OTHERWISE HAVE WITH RESPECT TO PRODUCER'S DECISION NOT TO CONDUCT ANY BACKGROUND INVESTIGATION(S) OR, IN THE EVENT PRODUCER CHOOSES TO CONDUCT BACKGROUND CHECKS, FOR ANY NEGLIGENTLY OR IMPROPERLY CONDUCTED BACKGROUND CHECKS, OR PRODUCER'S FAILURE TO SHARE THE RESULTS OF SUCH BACKGROUND CHECKS WITH ME AND I AGREE THAT ANY INJURIES, DAMAGES OR HARM ALLEGEDLY SUFFERED BY ME IN CONNECTION THEREWITH ARE HEREBY SPECIFICALLY INCLUDED WITHIN THE MATTERS RELEASED IN PARAGRAPH V BELOW AND INDEMNIFIED AGAINST UNDER PARAGRAPH V BELOW. INITIAL HERE:

14

D.   **Knowledge of and Assumption of Other Risks**: I acknowledge that the foregoing is not an exhaustive list of the risks, hazards and dangers I will be exposed to as a result of the Episode activities. I voluntarily and freely accept and assume these and all such other risks, hazards and dangers I may encounter or be exposed to and understand and acknowledge that the waivers, releases and indemnifications in this Agreement expressly apply to these risks, hazards and dangers. **INITIAL HERE:** V

## V.   RELEASES, WAIVERS AND INDEMNIFICATIONS

A.   **Definition of "Releasing Parties"**: As used in this Agreement, the term "Releasing Parties" means and refers to each of me, my heirs, next of kin, spouse, guardians, legal representatives, agents executors, administrators, successors and assigns. **INITIAL HERE:** tlu

B.   **Definition of "Released Parties"**: As used in this Agreement, the term "Released Parties" means and refers to each of Producer, the Network and their respective parent entities, subsidiary entities, affiliates, successors, licensees, designees and assigns, and their respective directors, officers, owners, employees, former employees, agents, attorneys, contractors, partners, shareholders, attorneys, representatives and members, both jointly and separately. **INITIAL HERE:** VA

C.   **Waiver of All Claims and Suits; Released Claims**: I and the other Releasing Parties hereby irrevocably agree that I and the other Releasing Parties will not sue or claim against any of the other Participants in the Episode and/or the Series or the Released Parties for any injury, bodily harm, illness, damage, loss or harm to me or my property, or my death, howsoever caused, resulting or arising out of or in connection with any defect in and/or failure of equipment, warnings or instructions, or my preparation for, participation and appearance in or elimination from the Episode or activities associated with the Episode.  In addition, I and the other Releasing Parties hereby unconditionally and irrevocably release and forever discharge each of the other Participants in the Episode and the Released Parties from and against any and all claims, liens, agreements, contracts, actions, causes of action, proceedings, demands, suits, costs, expenses, attorney's fees, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden arising out of or in connection with my preparation for, participation and appearance in, withdrawal from, or elimination from the Episode, the Activities or other activities associated with the Episode or the production and exploitation of the Episode, including, without limitation, claims for any injury, bodily harm, illness, damage, loss or harm to me or my property, or my death (collectively, the "Released Claims").  The Released Claims shall include, but not be limited to, those based on negligence or gross negligence of any of the Released Parties, the Episode production staff, or any of the other Participants in the Episode, products liability, breach of contract (express or implied), breach of any statutory or other duty of care owed under applicable laws, libel, slander, defamation, invasion of privacy, publicity or personality, negligent or intentional infliction of emotional distress, unauthorized commercial use of Likeness, and infringement of trademark, service mark or copyright.  **INITIAL HERE:** Q

D.   **Indemnification**: The other Releasing Parties and I irrevocably agree to defend, indemnify and hold the Released Parties harmless from and against any claim, loss, penalty, liability, cost and expense, including without limitation reasonable legal costs and attorneys' fees, arising out of (1) any actual or threatened breach of any agreement, warranty, representation or undertaking made by me in this Agreement and/or any of the Series Agreements and (2) my preparation for,

participation and appearance in or voluntary withdrawal and/or elimination from the Episode or the activities associated with the Episode. INITIAL HERE: [initials]

**E.** **Assumption of Risk of Unknown or Undiscovered Facts, Claims or Defects, and Release of Released Parties:** The other Releasing Parties and I acknowledge that there is a possibility that after my execution of this Agreement, I or they will discover facts or incur or suffer claims which were unknown or unsuspected at the time this Agreement was executed and which, if known by me or them at that time, may have materially affected my or their decision to execute this Agreement. I and the other Releasing Parties acknowledge and agree that by reason of this Agreement, and the release contained in the preceding paragraphs, I and the other Releasing Parties are consciously and deliberately assuming any risk of such unknown facts and such unknown and unsuspected claims. In no way limiting the choice of law provisions set forth in paragraph I below, the parties acknowledge that to the extent California law may be deemed to apply to the foregoing release notwithstanding such provisions, the other Releasing Parties and I have been advised of the existence of Section 1542 of the California Civil Code which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Notwithstanding such provisions, this release shall constitute a full release in accordance with its terms. I and the other Releasing Parties knowingly and voluntarily waive the provisions of Section 1542, as well as any other statute, law, or rule of similar effect under the laws of the State of California or otherwise, and acknowledge and agree that this waiver is an essential and material term of this release and this Agreement, and without such waiver Producer would not have accepted this Agreement or my participation in the Episode. I and the other Releasing Parties hereby represent that I and they have been advised by their legal counsel, understand and acknowledge the significance and consequence of this release and of this specific waiver of Section 1542 and other such laws. INITIAL HERE: [initials]

**VI.** **MISCELLANEOUS**

**A.** **Producer's Right to Suspend or Terminate this Agreement:** Producer shall have the unconditional right to terminate this Agreement and/or discontinue my participation in the Episode, the Series and/or the production or preproduction thereof, in Producer's sole and absolute discretion, with or without cause. Without in any way limiting the foregoing, Producer may elect to terminate my participation and/or my family's participation in or in connection with the Episode if any of the following occur: (i) if the Series is canceled or the Series format is materially altered; (ii) in the event of an occurrence of an event of force majeure (as defined below) which lasts for more than seven (7) days; (iii) in the event of my incapacity (including physical, psychological and/or mental disability) or default; (iv) in the event of my conviction of a misdemeanor or felony; (v) any other conduct of mine which, in Producer's reasonable judgment, would adversely affect my ability to represent Producer and the Network properly or to participate hereunder; (vi) any unauthorized contact between the Guest Wife, and any member of the Host Family (i.e. spouse, children or other members thereof) during the Production Period as set forth in paragraph I.H. above; or (vii) any consumption, possession or other use of illegal drugs (as indicated via a drug test or otherwise) during the Production Period. Producer shall have the right, in its sole discretion and for any reason, upon notice to me, immediately to suspend and/or discontinue my participation and/or my family's

participation hereunder and shall, during such period of suspension or, upon termination, be released from any further obligations to me whatsoever. Producer may terminate any period of suspension at any time in Producer's sole discretion and I shall thereupon resume my participation hereunder.

As used herein, an "event of force majeure" shall mean any act of God, inevitable accident, terrorism whether actual or threatened, anticipated or suspected, fire, lockout, strike or other labor dispute, riot or civil commotion, act of public enemy, law, enactment, regulation, rule, order or act of government or governmental instrumentality (either Federal, State or local, foreign or other), failure of technical facilities; or other cause of similar or different nature beyond Producer's control which materially interferes with, prevents, or impedes production of the Episode and/or the Series and the exploitation thereof or Producer's or the Network's operations.

Any potentially illegal behavior or activity including, but not limited to, drug use, violence, threats, harassment, intimidation or assault, during and after the period that this Agreement is in effect will result in immediate termination of my participation and/or my family's participation. I agree that I shall immediately leave the premises where the Episode is being filmed, taped and/or recorded unless such filming, taping and/or recording is taking place at my home after receiving said verbal notice of termination, or as otherwise instructed by Producer's personnel and Producer shall have no further obligation to me. The waivers, releases and indemnifications set forth above at paragraph V expressly apply to any claim or cause of action I or any Releasing Party may have against any of the Released Parties or any Participant arising out of or in connection with their presence in my home, or any property that I may own, or to which I have any right of possession, including without limitation trespass to any person, place or thing. I ACKNOWLEDGE THAT NO TERMINATION OF THIS AGREEMENT AND/OR DISCONTINUANCE OF MY PARTICIPATION WILL AFFECT ANY OF THE RIGHTS GRANTED OR ASSIGNED BY ME OR ANY OF THE COVENANTS, AGREEMENTS, WAIVERS, RELEASES OR INDEMNIFICATIONS MADE BY ME IN THIS AGREEMENT AND THE SERIES AGREEMENTS AND ANY AND ALL EXHIBITS AND ATTACHMENTS TO ANY OF THE FOREGOING DOCUMENTS.  INITIAL HERE:[ ]

B.    Restrictions on Use of Trademark: I shall not at any time use any of Producer's and/or the Network's, names, logos, trade names, service marks or trademarks (including, but not limited to, the title of the Series and/or the service marks or trademarks of the Network, their parent, sister, subsidiary and affiliate corporations, or of any of Producer's related companies) in connection with any kind of advertising, promotion, publicity, merchandise, tie-in, product or service, including without limitation any Internet site or Web content other than as provided in this Agreement.  INITIAL HERE:[ ]

C.    Representations, Warranties and Indemnifications:    I hereby represent and warrant as follows:    INITIAL HERE: [ ]

(1)   I am over 18 years old, or, if not, have arranged for countersignature by a parent or legal guardian.

(2)   I am a US resident residing in the United States.

(3)   I have accurately informed Produced as whether or not I am currently legally married and accurately identified my legal spouse, if any, to Producer;

(4)   I have never have been convicted of a felony, and I have never had a restraining order or other injunctive relief entered against me. If I have been

17

convicted of a misdemeanor, including without limitation traffic violations, I will advise Producer of such conviction(s).

(5)    I am not, nor is any member of my immediate family (parents, siblings, children) employed by the following entities or persons: RDF Media USA, Inc., the American Broadcasting Company, Inc., the ABC Television Network, The Walt Disney Company, their parent, subsidiary, and affiliated companies and/or anyone involved in the development, or production of the Series as well as immediate family/same household members of anyone so employed or involved, known sponsors of the Series or their advertising agencies, any station initially airing the Series, and/or their respective parents, affiliated companies, officers, directors, agents, representatives, licensees, partners, employees and assigns.

(6)    I have not appeared in a prime-time television reality /game show series, including but not limited to *Survivor*, *Big Brother*, *Who Wants To Be A Millionaire*, *Weakest Link*, *Greed*, *Amazing Race*, *Fear Factor*, *21*, *The Mole*, *Winning Lines*, *Temptation Island*, *The Runner*, *The Bachelor*, *The Bachelorette*, *Joe Millionaire*, etc. and am not and have not been involved in the current production of any such television series.

(7)    I have not entered into any other agreement, and I have not done and will not do any act or thing which in any way prevents, hampers, conflicts or interferes with the full and complete performance of my obligations to Producer or any rights which I have granted hereunder.

(8)    No other party, or any agent or attorney of any other party, has made any promise, representation or warranty whatever, express or implied, not contained herein concerning the subject matter hereof, to induce me to execute this document, and I acknowledge that I have not executed this instrument in reliance on any such promise, representation, or warranty not contained herein.

(9)    I have not accepted or given, and will not accept or give, directly or indirectly, any money, service or other valuable consideration from or to anyone for the inclusion of any matter whether physical, written, orally expressed or otherwise, in the Series, any Series episode or any Reunion, except to the extent that I have advised the Network and Producer of the same in writing and the Network and Producer has expressly approved same in their sole discretion, and then only provided that the same shall be disclosed, credited and/or identified in accordance with the requirements of Sections 317 and 508 of the U.S. Federal Communications Acts.  I am aware that payment or acceptance of, or agreement to pay or accept, any money or valuable consideration for the appearance of any person or the mention of any thing on the Episode without disclosure to the Network or other broadcaster prior to broadcast is a federal offense punishable by fine and/or imprisonment.  I agree that if anyone tries to induce me to make any such product mention or placement or to do any such act or accept any such money or consideration, I shall immediately notify Producer and a representative of the Network.

(10)    Except with respect to materials which Producer furnished to me, no statements by me and no Materials (as defined above at paragraph II.D) or any use thereof by Producer, the Network, or their licensees, successors or assigns, will violate or infringe upon the trademark, service mark, trade name, copyright, right of privacy or publicity, property rights of any other right of any party (including without limitation any other Participant) nor constitute unfair competition, defamation, libel or breach of contract.

(11)    I will cooperate with Producer and will take steps which Producer reasonably requests to evidence or protect Producer's rights hereunder.  I agree to

18

execute such further documents and instruments, releases and authorizations and do any acts or deeds as Producer and/or the Network may reasonably request in order to effectuate this Agreement or otherwise required to evidence or protect Producer's or the Network's rights hereunder.  If I fail or am unable promptly to execute any such documents or instruments, I hereby irrevocably appoint each of Producer and the Network as my attorney-in-fact to execute and file any such documents or instruments or do any such acts or deeds, provided that said documents, instruments, acts, and deeds shall not be inconsistent with the terms and conditions of this Agreement.  I agree that Producer's and the Network's rights under this Paragraph constitute a power coupled with an interest and are irrevocable.

(12)  If I display in the Episode any photographs, published works, and/or other artistic materials, then I will have obtained all of the rights, clearances and releases necessary for Producer and the Network to exploit said materials in the Episode or I agree to remove such items from display before any filming or taping.

(13)  During my participation in the Episode, I will not maintain within or bring into my home, the surrounding property thereof, or any place where my presence is requested by Producer including, but not limited to, any location within the state of New York or wherever else any Episode may take place (collectively "Episode premises") or carry on my person, any illegal drugs, weapons, or other illicit or deadly items.  I will not engage in any illegal activities during my participation in the Episode.  I will not use, consume or partake in any illegal drug usage or activity during the Episode production period whether on the Episode premises or elsewhere.

(14)  I agree that at no time will I threaten, encourage or engage in any type of physical confrontation or assault with any person or persons connected with the Episode.  I further understand and agree that I am responsible for my own actions before, during, and after my participation in the Episode.

(15)  I understand and agree that I will be prohibited from wearing any apparel, including, but not limited to shirts, pants, shorts, and hats, that contain any recognizable logos, trademarks, or service marks unless Producer has specifically provided such apparel to me or pre-approved its use, or Producer will require such logos, trademarks or service marks to be covered with tape or otherwise.

(16)  I represent and warrant that I am in good physical and mental health and I have disclosed to Producer any and all of my known medical or psychological conditions which might impact upon my health and well-being, or the health and well-being of any of the Participants, Episode production staff and/or other persons working in, visiting, or residing within in the premises in which the Episode is to be taped, filmed and/or recorded, and/or employees and executives of Producer and the Network.

(17)  I represent and warrant that I have advised Producer as to whether I have health insurance.

(18)  I have full right, power and authority to enter into and fully perform this Agreement.  If I am the parent or legal guardian of a minor, I have the full right, power and authority to enter into and approve the performance of minor under this Agreement on behalf of such minor and that the consent of any third party (including but not limited to any relative) is not required.

(19)  I will abide by all Participant rules of conduct, all U.S. laws and all applicable state and local laws.

19

(20)  As of the date hereof, if I am an adult, I am not a candidate for public office and I agree that I will not become a candidate for public office until one (1) year following the initial exhibition of the Episode in which I appear.

D.   **Confidentiality/Disclosure:**  Any and all information disclosed to or obtained by me concerning or relating to the Episode, the Series, the Participants, the events contained in the Episode, the outcome of the Episode, my participation in the Episode, Producer, the Network and the terms and conditions of this Agreement shall be strictly confidential.  I agree that I shall NOT disclose or cause to be disclosed to any third party any information to which I have had or will have access concerning the Episode, the Series, my participation in the Episode, the other participants, their friends or families, Producer, the Network, or the Network's programming or other services, or the terms and conditions of this Agreement (collectively "Confidential Information") except as required to fulfill my obligations hereunder; as expressly authorized by Producer in writing; or as required by law.  If I am required by legal process or by operation of applicable law to disclose any Confidential Information, it is agreed that I will provide Producer and Network with prompt notice of such request(s) so that Producer and Network may seek an appropriate protective order, pose objections and defenses, and/or waive compliance by and with the provisions of this Agreement.  I also agree that I shall not disclose or cause to be disclosed by any means, whether oral, written, or by any other means including the Internet, any Confidential Information to any Participant, individual or entity including, without limitation, any members of the press.

I ACKNOWLEDGE THAT ANY DIRECT OR INDIRECT DISCLOSURE OF ANY CONFIDENTIAL INFORMATION WILL CONSTITUTE A MATERIAL BREACH OF THIS AGREEMENT AND WILL CAUSE PRODUCER AND THE NETWORK SUBSTANTIAL AND IRREPARABLE INJURY ENTITLING PRODUCER (AND/OR THE NETWORK, AS A THIRD PARTY BENEFICIARY OF THIS PROVISION) TO, AMONG OTHER THINGS:  (1) INJUNCTIVE OR OTHER EQUITABLE RELIEF, WITHOUT POSTING ANY BOND, TO PREVENT AND/OR CURE ANY BREACH OR THREATENED BREACH OF THIS PARAGRAPH BY ME; AND (2) RECOVERY OF THE PRODUCER'S AND/OR THE NETWORK'S DAMAGES INCLUDING, BUT NOT LIMITED TO, THE LIQUIDATED DAMAGES SET FORTH IN SUBPARAGRAPH 6.F. BELOW, AND ATTORNEYS' FEES, LEGAL EXPENSES AND COURT COSTS INCURRED TO ENFORCE THIS PARAGRAPH.  I ALSO AGREE NOT TO MAKE ANY PERSONAL APPEARANCE FOR ANYONE OTHER THAN PRODUCER AND/OR NETWORK OR MAKE ANY STATEMENT TO ANY MEDIA PERSON OR SERVICE WITH RESPECT TO THE EPISODE AND/OR THE SERIES WITHOUT PRODUCER'S AND NETWORK'S PRIOR WRITTEN APPROVAL AS SET FORTH IN THIS AGREEMENT.  IN ADDITION TO THIS PARAGRAPH D, PRODUCER AND I HAVE AGREED THAT WE MAY CHOOSE TO ENTER INTO A SEPARATE CONFIDENTIALITY AGREEMENT.  IN THE EVENT THE PROVISIONS OF THIS AGREEMENT AND THE CONFIDENTIALITY AGREEMENT DIFFER, THE TERMS OF THE CONFIDENTIALITY AGREEMENT SHALL CONTROL.  IN THE EVENT MY PARTICIPATION IN THE EPISODE CEASES FOR ANY REASON, I AGREE THAT THE TERMS OF THIS PROVISION SHALL REMAIN BINDING ON ME.  INITIAL HERE:

E.   **Remedies:**  I acknowledge and agree that the rights I have granted hereunder and my participation related thereto are unique, unusual, special and extraordinary, the loss of which would not be adequately compensable in damages in an action at law.  I further agree that, in addition to any rights or remedies which Producer may have under this Agreement or otherwise, Producer therefore would be entitled to all available equitable remedies in case of my breach or threatened breach of this Agreement.  Any remedies, rights, undertakings and obligations contained in this Agreement shall be cumulative.  No remedies, rights, undertakings, or obligations shall be in limitation of any other remedy, rights, undertaking, or obligation of either party.  No breach of this Agreement shall entitle me to terminate or rescind the rights granted to Producer or the Network herein.  I hereby waive the right in the event of any such breach by Producer or the Network, to equitable relief or to enjoin, restrain or interfere with the exercise of any of the

20

Granted Rights, it being my understanding that my sole remedy shall be the right to recover monetary damages with respect to any such breach. INITIAL HERE: ___

   F.   **Liquidated Damages**: I agree that any breach or violation by me of any of the terms or provisions of this Agreement shall result in substantial damages and injury to Producer and/or the Network, the precise amount of which would be extremely difficult or impracticable to determine. Accordingly, Producer and I have made a reasonable endeavor to estimate a fair compensation for potential losses and damages to Producer and/or the Network which would result from any breach by me of any material term of this Agreement, including, but not limited to paragraph VI.D. above, and, therefore, I further agree that, in addition to the remedies set forth herein above, I will also be obligated to pay, and I agree to pay to Producer and/or the Network, the sum of Five Million Dollars ($5,000,000) as a reasonable and fair amount of liquidated damages to compensate Producer and/or the Network for any loss or damage resulting from each breach by me of the material terms hereof. I further agree that such sum bears a reasonable and proximate relationship to the actual damages that Producer and/or the Network will or may suffer from each breach by me, and is not a penalty. INITIAL HERE: ___

   G.   **Assignment**: I acknowledge that I shall have no right to assign this Agreement or delegate any of my responsibilities hereunder to any third party. Producer shall have the right to assign this Agreement freely. INITIAL HERE: ___

   H.   **Relationship of Parties**: I acknowledge and agree that my relationship to Producer is limited solely to that of a grantor of rights and not as an employee of Producer or of an independent contractor. I acknowledge and agree that I will be responsible for payment of any and all taxes and insurance applicable under existing law on the Honorarium paid to me hereunder, if any, and on any goods and/or services I may receive in connection with the Episode and/or the Series, if any, including but not limited to, Social Security taxes, Federal, State and Local income taxes. I hereby agree to complete, execute and deliver, in person, to Producer all required forms, if any, necessary for identity and eligibility under the 1986 Immigration Reform and Control Act. I warrant and represent that I will make all necessary payments due governmental agencies to comply with the foregoing. INITIAL HERE: ___

   I.   **Complete Agreement; Applicable Law**: This Agreement, and any exhibits and attachments hereto, together with the Release and Indemnity Agreement, Participant Questionnaire, Emergency Medical Release, Authorization for Release of Medical Information, Disclosure and Authorization for Consumer and Personal Background Reports, Authorization for Release of Records & Information and Authorization for Release of Medical Records & Information, as well as any and all releases and/or authorizations presented by Producer and signed by me, contain the entire understanding between the parties, and supersede all prior negotiations, understandings and agreements (whether written or oral) of the parties hereto relating to the subject matter herein. This Agreement cannot be changed or terminated except by a written instrument signed by the parties hereto.

   Except for the arbitration provisions set forth below, which shall be governed by the Federal Arbitration Act, this Agreement and all matters or issues collateral thereto shall be interpreted in accordance with and governed by the laws of the state of New York applicable to contracts executed and performed entirely therein (regardless of the actual place(s) of performance). Any and all controversies, claims or disputes arising out of or related to this Agreement or the interpretation, performance or breach thereof, including, but not limited to, alleged violations of state or federal statutory or common law rights or duties, and the determination of the scope or applicability of this Agreement to arbitrate ("Dispute"), except as set forth in subparagraphs (2) and (3) below, shall be resolved according to the

21

procedures set forth in subparagraph (1) below which shall constitute the sole dispute resolution mechanism hereunder: INITIAL HERE: ✓

      (1)   Arbitration: In the event that the Parties are unable to resolve any Dispute informally, then such Dispute shall be submitted to final and binding arbitration. The arbitration shall be initiated and conducted according to either the JAMS Streamlined (for claims under $250,000) or the JAMS Comprehensive (for claims over $250,000) Arbitration Rules and Procedures, except as modified herei , including the Optional Appeal Procedure, at the New York City office of JAMS, or its successor ("JAMS") in effect at the time the request for arbitration is made (the "Arbitration Rules"). The arbitration shall be conducted in New York City before a single neutral arbitrator appointed in accordance with the Arbitration Rules. The arbitrator shall follow New York law and the Federal Rules of Evidence in adjudicating the Dispute. The parties waive the right to seek punitive damages and the arbitrator shall have no authority to award such damages. The arbitrator will provide a detailed written statement of decision, which will be part of the arbitration award and admissible in any judicial proceeding to confirm, correct or vacate the award. Unless the Parties agree otherwise, the neutral arbitrator and the members of any appeal panel shall be former or retired judges or justices of any California or New York state or federal court with experience in matters involving the entertainment industry. If either party refuses to perform any or all of its obligations under the final arbitration award (following appeal, if applicable) within thirty (30) days of such award being rendered, then the other party may enforce the final award in any court of competent jurisdiction in the state of New York. The party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys' fees, incurred in enforcing the award, to be paid by the party against whom enforcement is ordered.

      (2)   Other Matters: Any Dispute or portion thereof, or any claim for a particular form of relief (not otherwise precluded by any other provision of this Agreement), that may not be arbitrated pursuant to applicable state or federal law may be heard only in a court of competent jurisdiction in New York, New York.

      (3)   No waiver of any breach of or default under any provision hereof shall be deemed a waiver of such provision, or of any subsequent breach or default. If any provision hereof shall be deemed invalid or unenforceable by a court or other forum of competent jurisdiction, said provision shall be modified to the minimum extent necessary to effect compliance with such law, and in any event such invalidity or unenforceability shall have no effect upon the remaining terms and conditions hereof. The grant of rights, representations, warranties, indemnifications, restrictions on use of names, logos, trade names, trademarks, service marks, and confidentiality obligations contained herein shall survive the expiration or earlier termination of this Agreement. The paragraph headings and numbers, and have been inserted herein for the purpose of convenience only and neither they nor the organization thereof shall be used in interpreting this Agreement. The provisions hereof shall be binding upon me and my heirs, executors, administrators and successors. I acknowledge that Producer has explained to me that an attorney prepared this Agreement and that Producer has recommended to me that I consult with my attorney in connection with this Agreement.

      J.   Knowledge and Understanding of the Agreement: I HAVE BEEN GIVEN AMPLE OPPORTUNITY TO READ, AND I HAVE CAREFULLY READ, THIS ENTIRE AGREEMENT. I CERTIFY THAT I HAVE MADE AN INVESTIGATION OF THE FACTS PERTINENT TO THIS AGREEMENT AND OF ALL THE MATTERS PERTAINING THERETO AS I HAVE DEEMED NECESSARY, THAT I FULLY UNDERSTAND THE CONTENTS OF THIS AGREEMENT, THAT I AM OF SOUND MIND, AND THAT I INTEND TO BE LEGALLY BOUND BY THIS AGREEMENT. I AM AWARE THAT THIS AGREEMENT IS, AMONG OTHER THINGS, A RELEASE OF LIABILITY FOR FUTURE INJURIES AND A CONTRACT BETWEEN MYSELF AND

PRODUCER AND/OR ITS AFFILIATED ORGANIZATIONS, AND THAT I AM SIGNING THIS AGREEMENT OF MY OWN FREE WILL.   EACH STATEMENT THAT I HAVE MADE IN THIS AGREEMENT IS TRUE.   THE NAME GIVEN BELOW IS MY LEGAL NAME.   ANY OTHER NAME(S) OR ALIAS(ES) USED BY ME WITHIN THE PAST FIVE YEARS ARE ALSO NOTED BELOW.   THE SOCIAL SECURITY NUMBER FURNISHED IS MY TRUE SOCIAL SECURITY NUMBER.   INITIAL HERE: _____

After Producer and I have signed this Agreement where indicated below, the foregoing shall constitute a binding and enforceable Agreement between us.

DATED: 3/29/07                              DATED: _____

APPLICANT:                                 RDF MEDIA USA, INC.

Signature _____            By: _____
Print: Karen Guastaferro                   Its: _____
Address: 86 Stony brook LN
Williamsville, NY 14221
Telephone: 716-632-8468
Social Security Number: 113 46 9108

Other Names and Aliases (if applicable):

_____

Birth Date (if minor): _____

**Parental/Legal Guardian Consent:** I represent and warrant that I am the parent or legal guardian of the minor whose name appears above ("Minor"), that I have read and approve of the foregoing Release and Waiver, Agreement Not To Sue, Indemnification and Hold Harmless Agreement and Participant Agreement ("Agreement") and consent to its execution by my child/ward.   I hereby release the Released Parties as set forth and in accordance with paragraph V above from any claims and/or causes of action I may have against them of any nature whatsoever.   I hereby fully and unconditionally guarantee the performance of my child's/ward's obligations and the grant of rights as set forth above.

_____          _____     _____
Signature of parent or legal guardian      Printed Name          Date

_____          _____
Address                                    Phone number

23